T. Y. CRAWFORD, solicitor, by W. A. TIGNER, *contra.*

---

FORD *v.* THE STATE.

1. The fact that a witness has been convicted of a crime involving moral turpitude is admissible for the purpose of discrediting his evidence. *Georgia Railroad v. Homer*, 73 *Ga.* 251. When such conviction has been proved, it is not error for the court to charge the jury upon the law as to the impeachment of witnesses. Evidence which discredits a witness on the ground of infamy tends to impeach him.

2. The evidence warranted the verdict, and there was no error in denying a new trial.        *Judgment affirmed.*
   April 10, 1893.

Indictment for larceny from the house. Before Judge FISH. Sumter superior court. November term, 1892.

The motion for a new trial, in addition to the general grounds, assigned error upon the admission in evidence of a record from the county court, showing the conviction of Dorsey (defendant's witness) of simple larceny, over objection that it was irrelevant, and that if offered for impeachment, as stated by counsel, it was not competent for that purpose. Further error was assigned upon the charge of the court as to impeachment of witnesses, because, there being no other witness sought to be discredited or impeached, the effect of such charge was to lead the jury to believe that the evidence before mentioned was introduced for the purpose of impeaching Dorsey, whereas it was not offered to impeach him but simply to discredit his testimony, and was inadmissible for impeachment.

There was testimony for the State, that a gold ring with a diamond setting, which cost originally $240, was stolen from the premises of Fouche between the 26th of April and early in May. Two other rings were also missed. The ring in question was found in the possession of defendant about the middle of May. He said he bought it from a peddler in Macon a year and a half before, and gave $5 for it. He told another person, about the 1st of May, that he got it down the country and $40 could not buy it, and at the time pulled another ring out of his pocket. He also told the policeman who arrested him, and to whom he had said he got the ring in Macon, that that was a story and that he got it in Americus from a peddler about three months before his arrest, the arrest being about the middle of May. He said he gave $5 for the ring. The policeman got the ring from defendant at the depot, but did not remember that defendant said he was going anywhere; defendant had a grip or hand-satchel in his hand. To another

witness defendant stated, that he bought the ring from a peddler in front of Col. Cutts' gate and paid $5 for it; that the peddler had a great many things and among them was this ring; that he bought it and paid the peddler for it about three months ago; that the peddler told him he had better be very careful with that ring, keep it hid, if he did not, somebody might take it away from him—some girl would get it away from him. At another time defendant told this witness that he bought the ring about three weeks previously.

Dorsey and another witness gave testimony (corresponding substantially with defendant's statement) tending to show that defendant bought the ring from a man they did not know, and paid him $5 for it, etc.

E. F. Hinton and E. H. Cutts, for plaintiff in error.

C. B. Hudson, solicitor-general, by Hudson & Blalock, contra.