## KELLER *v.* THE STATE.

1. Though in the trial of an indictment for seduction the accused requested
   the sequestration of the State's witnesses, it was not an abuse of discre-
   tion to allow the father and mother of the woman alleged to have been
   seduced, and who was the prosecutrix in the case, to remain in the court-
   room and testify as witnesses, the record disclosing no reason for con-
   cluding that so doing prejudicially affected the accused, and it also ap-
   pearing that the case turned mainly upon the testimony of the prosecu-
   trix herself.
   (a) The grounds of the motion for a new trial, filed in the present case, al-
   leging improper communications between the parents and the daughter
   by means of signs or signals while the testimony was being elicited, were
   not only not verified by the judge, but his certificate in effect negatives
   the occurrence of any such misconduct.
2. There was no error in refusing to permit counsel, in examining a witness,
   to ask questions the answers to which would apparently have been irrel-
   evant to the issue on trial, when the purpose for which the questions
   were asked was not disclosed to the court, though the counsel asking the
   questions was requested to do so by the judge. This is true even though
   it may have subsequently appeared that the answers to these questions
   might, in connection with other evidence, have been admissible and ma-
   terial.
3. There being in the trial of an indictment for seduction evidence relating

to an offer of marriage, either bona fide or pretended, alleged to have been made by the accused to the woman after the institution of the prosecution, and the record disclosing that counsel for the accused in his concluding argument "was discussing the legal effect of the alleged offer of marriage," this court can not, in the absence of further light, undertake to say that the trial judge erred in inquiring of the counsel whether "the offer of marriage was still open," the judge certifying that this question was asked "to learn from counsel his position in the case."

4. The victim of a seduction is not an "accomplice" to the offense committed, in the sense in which the word just quoted is used in section 991 of the Penal Code, requiring the testimony of at least two witnesses to convict of a felony, or corroborating circumstances "where the only witness is an accomplice."

5. In a trial for seduction it is proper for the jury to take into consideration any evidence tending to show that the woman was of a lewd disposition or lascivious nature, this evidence being material in determining the question whether she was or was not in fact virtuous at the time of the alleged seduction, and if so, in deciding whether she was really seduced by persuasion and promises of marriage, or yielded her virtue because of wanton and lustful desires. There was, however, in the present case no error in refusing to give in charge to the jury a request substantially embodying the law as above stated, when there was no evidence upon which to base the same.

6. It is competent in the trial of an indictment for seduction for the State to prove that more than one act of sexual intercourse had taken place between the accused and the woman alleged to have been seduced, and that upon each occasion after the first the accused continued to make promises of marriage. In drawing out such testimony it is within the discretion of the court to allow the woman to be asked leading questions.

7. It is not competent in such a trial for the accused to prove acts of sexual intercourse between the woman and any person or persons other than himself, occurring after the time when the alleged seduction took place.

8. A woman who has never been married, and who has never had sexual intercourse, is in law virtuous, in the sense that she may be the victim of seduction; but if she yields to a man, not because of persuasion and promises of marriage, or by reason of other false and fraudulent means, but because she is lustful, wanton, and desirous of the intercourse in order to gratify her own passions, she is not seduced. A woman of the character just indicated may nevertheless be seduced, if, notwithstanding her passionate nature, she keeps her chastity and surrenders it because of persuasion and promises of marriage, which, in connection with her love for and confidence in the man, overcome her virtue.

9. In passing upon the statement of the accused, the jury may consider whether or not it is consistent and true, and, in determining what weight should be given to it, may also take into consideration the testimony of the witnesses sworn in the case, and test the statement in the light thereof.
   LITTLE, J., dissenting.

10. The ground of the motion for a new trial predicated upon alleged newly discovered evidence presents no cause for setting aside the verdict, and

does not commend itself to favorable consideration. When all the affi-davits pro and con. filed in connection with this ground are considered, no reason is afforded for believing that at another hearing the accused would be able to produce any credible evidence tending to show that the prosecutrix was unchaste at any time prior to the alleged seduction.

11. The numerous grounds of the motion for a new trial, not specifically covered by the rulings above announced, disclose no cause for reversing the judgment.

Argued May 17, — Decided August 10, 1897.

Indictment for seduction. Before Judge Falligant. Chatham superior court. March term, 1897.

*Garrard, Meldrim & Newman,* for plaintiff in error.
*W. W. Osborne, solicitor-general,* contra.

FISH, J. In the case of *Johnson* v. *State,* 14 *Ga.* 62, this court stated the rule regarding the sequestration of witnesses to be, that while the State, before the examination commences, "may demand that the witnesses should retire, in order to each being questioned in the absence of the others," the court was not bound, at the instance of the accused, to take any action in the premises, though a request on his part that an order looking to this end be passed might very properly be granted "as matter of indulgence and not of right." Since the adoption of our code, a much more equitable practice has been of force, whereby the accused is put upon an equal footing with the State in this respect, and the court is enjoined to effect the object of the rule so "far as practicable and convenient." Penal Code, §1017; *Turbaville* v. *State,* 58 *Ga.* 545. As formerly, however, "it is in a great degree discretionary with the presiding judge whether he will allow some" of the witnesses to remain in the court-room to assist in the conduct of the case, when he is requested so to do by one of the parties. *Carson* v. *State,* 80 *Ga.* 170; *Dale* v. *State,* 88 *Ga.* 557; *Betts* v. *State,* 66 *Ga.* 508; *May* v. *State,* 94 *Ga.* 76; *Hinkle* v. *State,* Ibid. 596; *Thomas* v. *State,* 27 *Ga.* 287, 296.

Certainly, in the present case, there was no abuse of discre-tion in acceding to the request of the solicitor-general that the prosecutrix might be permitted to remain in the court-room to assist him in the prosecution. And even though it may not have been likewise proper to also allow her father and mother

to be present during the examination of the witnesses, it is equally certain that the error (if any) thus committed was one unattended with injury to the accused. The record discloses that the case turned mainly upon the testimony of the prosecutrix herself; and that of the father and mother bore only indirectly upon the controlling questions at issue, and was of no great materiality. We therefore think it far from reasonable to assume that they were influenced in testifying as they did by what fell from the lips of other witnesses. The accused introduced in his behalf no evidence whatsoever, and accordingly no conflict as to even minor matters resulted, as might have been the case had these two witnesses been introduced in rebuttal to evidence elicited from witnesses testifying in his favor. Indeed, the record before us fails utterly to present any reason for concluding that the action of the court of which complaint is made in any way operated to his prejudice.

It was insisted in the argument here, that although it may not have been improper, in the first instance, for the court to allow the prosecutrix and her father and mother to remain in the court-room, it was manifest error to permit them to do so after counsel for the accused had called the court's attention to "signs" made by the former to her father while he was on the stand, and to similar "signs" made by the mother to the prosecutrix while the latter was testifying. It was also urged that the court committed error in not thereupon promptly declaring a mistrial. An inspection of the record shows, however, that the several grounds of the motion for a new trial, setting forth the complaint of the accused concerning this alleged misconduct on the part of the prosecutrix and her mother, can not properly be considered by this court, as the same are not verified. The trial judge in this connection certifies that he "was looking directly at the parties in both instances, and saw no signs made"; yet, when attention was directed by counsel to this alleged improper conduct, "declared with positiveness that anything of the kind was wrong and must not be done. There was no request that a mistrial be declared." If counsel was satisfied that the prosecutrix and her parents were guilty of conduct calculated to prejudice the accused, notwithstanding the court

had failed to observe the same, the proper course to pursue would have been to request the court to then and there investigate into the truth of the matter, and, if the charge preferred against the witnesses was sustained, to declare a mistrial.  See *Smalls* v. *State*, ante, 31.  It is too late, after verdict, to complain for the first time of matters which might have been made the basis of a motion for a mistrial.  *Metropolitan Railroad Co.* v. *Powell*, 89 *Ga.* 601; *Edwards* v. *State*, 90 *Ga.* 143; *Farmer* v. *State*, 91 *Ga.* 720.

2. In another ground of his motion for a new trial, the accused complains that the court refused to permit his counsel to ask the prosecutrix, on her cross-examination, concerning her physical condition on a specified ʻdate some two years or more after her alleged seduction, or as to the birth of a second child with which she was then pregnant.  The purpose for which counsel sought to elicit testimony on this line was not stated to the court at the time, but was for the first time disclosed when the accused filed his amended motion for a new trial.  As counsel therein undertakes to explain, he intended to follow up his questions to the prosecutrix by showing that her pregnancy was not known to the accused when he then made to her an offer of marriage; that she had stated to her attending physician, who was present in court as a witness for the accused, that the father of both of the children born to her was the same man; and that from the admitted absence of connection of the prosecutrix with the accused for over a year before the birth of the second child, "it was a natural impossibility for the defendant to be father of the second child, and therefore, according to her admission, not the father of the first one."  The questions which counsel proposed to ask the prosecutrix were apparently totally irrelevant to the issue on trial.  That he was not allowed to put them to the witness can afford no just cause of complaint, as he voluntarily chose not to reveal to the court the supplemental evidence which he now claims it was in his power to produce (but which he did not thereafter offer), in connection with which the answers he expected to elicit from the prosecutrix might have had some bearing on the case.  It appears rather that the accused did not deal fairly with the court, than that

the court did not deal fairly with the accused, with regard to the matter under discussion.

3. The circumstances under which the trial judge put to counsel the inquiry referred to in the third headnote are not disclosed by the record, and, in the absence of fuller light on the subject, we are not prepared to say any error was committed. We confidently assert, as an abstract proposition, that it is not improper for the court to endeavor "to learn from counsel his position in the case," and, to that end, to inquire of him concerning any point in issue as to which counsel has not made his attitude free from doubt. We can not assume that a trial judge has, with this object in view, unwittingly prejudiced the rights of a party before the court. On the contrary, it being incumbent on a party alleging error to make the same clearly to appear, we are bound to presume, where this requirement is not met, that the occasion called for the action taken by the judge, and that no injury to the party complaining resulted therefrom in point of fact.

4.. Exception is taken to the refusal of the court to give in charge to the jury the following written request: "Under the law of Georgia, seduction is a felony, and by [statute] the testimony of an accomplice, uncorroborated, is insufficient to convict. I charge you in this case that the testimony of the prosecuting witness, Florence W. Marshall, must be corroborated before there can be any conviction." No error was committed in declining to give to the jury this instruction. Where a virtuous unmarried female has been cruelly betrayed, it is evident that she has been much more sinned against than sinning; and the law regards her as the victim, rather than as an accomplice, of him who accomplishes her ruin and brings about her downfall. Thus is she regarded even where she has given her consent and voluntarily submits to an operation intended to produce an abortion. 1 Am. & Eng. Enc. L. (2d ed.) 390, citing numerous decisions. "The test in general to determine whether a witness is or is not an accomplice is the inquiry: Could the witness himself have been indicted for the offense, either as principal or as accessory? . . It follows that a participant in an offense, however morally guilty he may be,

whose connection with the forbidden transaction does not render him liable to an indictment therefor, is not an accomplice." Ibid. Applying this test, the conclusion seems irresistible that the prosecutrix in the case at bar is not to be deemed an accomplice of the accused.

5. Counsel for the defense further requested the court to charge: "While, as a general rule unmarried females who are virgins are virtuous, and those who by their own consent have ceased to be virgins are not virtuous, still the question of moral chastity should be considered by the jury in determining the fact whether the woman be or not be virtuous. The jury have the right to consider further whether the woman was seduced by the accused, or joined with him in the gratification of lewd and lascivious desire, [not] excited by arts and importunities upon his part." We recognize the fact that the above request was substantially in accord with the law as announced in the fifth headnote, which follows the decision of this court in *O'Neill* v. *State*, 85 *Ga.* 409. In the present case, however, such a charge would have been highly improper, for there was no evidence before the jury upon which it could have been predicated.

6. Error is assigned because the court permitted the State to prove, over the objection of defendant's counsel, that promises of marriage were made after the alleged seduction; the question being, "Did he make promises each time?" and the grounds of objection urged being that "the question was leading, and the evidence sought was irrelevant." As to the first point raised, suffice it to say that this court has uniformly held it to be within the discretion of a trial judge to permit leading questions to be propounded to a witness. There is no merit in the contention that the evidence elicited was irrelevant. The present case has many of the features of, and is quite similar to, that of *McTyier* v. *State*, 91 *Ga.* 254, wherein it was held: "On a trial for seduction alleged to have been accomplished by persuasion and promises of marriage, promises of marriage made and letters written by the accused to the woman, after the seduction but pending the marriage engagement, are admissible in evidence."

7. It by no means follows, however, that it is competent, on such a trial, for the accused to prove acts of sexual intercourse between the female and a person, or persons, other than himself, occurring after the time when the alleged seduction took place. *Mann* v. *State*, 34 *Ga.* 5. That the victim of his lust thereafter follows a life of shame, if not traceable solely to the wrong he has perpetrated upon her, is a circumstance under which he can not take shelter; for it is of no evidentiary value in determining whether or not she had maintained her virtue until deceived by him. Accordingly, we think the court properly ruled that evidence concerning the birth of a second child born to the prosecutrix, of which the accused was certainly not the father, was inadmissible.

8. The meaning of the term "virtuous," as used in our statute (Penal Code, § 387) declaring it penal to seduce "a virtuous unmarried female," is for determination by the court, not by the jury; though "whether a particular woman had parted with her virginity before the alleged seduction took place is a question for the jury." *O'Neill* v. *State*, 85 *Ga.* 383, followed in *McTyier* v. *State*, 91 *Ga.* 255. A woman who has never been married, and who has never had sexual intercourse, is in law virtuous, in the sense that she may be the victim of seduction. Whether such a woman has really been seduced, or only joined with her alleged seducer in the gratification of lewd and lascivious desire, not excited by his arts and importunities, but having its roots in her own depraved and debauched mind, is a question the jury are to consider under all the facts and circumstances in proof before them. Ibid. And, in any given instance, they are to decide whether she yielded to the accused, not because of persuasion and promises of marriage, or by reason of other false and fraudulent means, but because she was lustful, wanton, and desirous of the intercourse in order to gratify her own passions. Every virgin, however passionate her nature, may be seduced if, notwithstanding her lustful desires, she keeps her chastity and surrenders it only because of persuasion and promises of marriage, which, coupled with her love for and confidence in her tempter, overcome her virtue and cause her to yield to his importunities. For "the weakest of

all weak virgins is under the protection of law against the seducer, and if her fall can be traced to actual seduction, the law will be, and should be, her avenger." *O'Neill's* case, supra.

. Exception·was taken to certain extracts from the charge of the court bearing upon this branch of the case, which were substantially in accord with the principles of law just stated. ·Without dealing specifically with the various criticisms thereon urged by counsel for the accused, we rule generally that no error was committed in this connection. As no new or specially important questions are thereby presented for determination, no further discussion or citation of authority would be profitable. ·

9. Another .ground of the motion for a new trial assigns as error the following charge: "If you find the statement consistent and true, you have the right to believe it in preference to the sworn testimony in the case. You should not do so ·carelessly and capriciously, but under your oaths as jurors, considering the statement in connection with the sworn testimony in the case, and, testing it in the light of that testimony, give it such weight as you think proper." The error assigned is, "that said charge is illegal, in that the weight to be given to the statement of a prisoner is not to be tested in the light of the testimony; there being no test by which the jury shall determine the degree of belief that they shall give to the statement of a prisoner." All of us, except Mr. Justice Little, are of opinion that there was no error in this charge. The statute provides that, "the jury may believe such statement in preference to the sworn testimony in the case." The jury can do nothing carelessly, capriciously, or arbitrarily; the statute, interpreted according to the meaning of the words used, is the measure of their power. "Belief" is a persuasion of the truth, or an.assent of the mind to the truth of a declaration, proposition, or alleged fact. (See Webster's Dictionary.) "Preference" means the act of preferring one thing above another; estimation of one thing more than another; choice of one thing rather than another. (Ib.) The jury can not believe the statement of the prisoner unless they are persuaded of its truth; nor can they believe such statement *in preference* to the

sworn testimony in the case until they have compared the one with the other, determined their preference, and decided which of the two they will accept as the truth. In no other way can they believe one *in preference* to the other. Surely the statute never intended to authorize the jury to *accept* the prisoner's statement without consideration of its own truth and without regard to the existence of the sworn testimony.

10. We are unable to say that the court below committed error in refusing to set the conviction aside because of the alleged newly discovered evidence presented in connection with the motion for a new trial filed by the accused. The showing made by him was fully met by counter-affidavits presented in behalf of the State; and accordingly it does not satisfactorily appear that, if afforded the opportunity, the accused would be able at another hearing to produce credible witnesses whose testimony would outweigh that of the State's witnesses concerning the chastity of the prosecutrix previously to her alleged seduction. The rule is well settled, that a new trial will not be granted because of newly discovered evidence, unless it be of a character calculated to influence the jury, upon another investigation, to reach a different conclusion concerning the controlling facts at issue.

11. A number of minor questions are also presented by the motion for a new trial, but none of them are of sufficient importance to require special notice. The foregoing discussion disposes of every assignment of error which could possibly be regarded as affording ground for a reversal of the judgment of the court below. The charge of the court was, as a whole, a clear and able exposition of the law governing the case, and fully covered every request to charge in so far as it was legal and pertinent. The accused introduced no evidence in his own behalf but chose to rely solely upon his unsworn statement. The jury credited rather the evidence in behalf of the State, and, for aught that appears, their verdict should be allowed to stand. *Judgment affirmed. All the Justices concurring.*

LITTLE, J. I concur in the judgment, but dissent from the ruling in the ninth division of the decision.