## BARNES *v.* THE STATE.

The evidence fully sustained the verdict which was rendered. There was no error committed by the trial judge in charging the jury, which requires a reversal of the judgment. The issues made by the evidence were fairly submitted. The newly discovered evidence, when considered in connection with the testimony of the witnesses sworn in the case, neither requires nor authorizes the setting aside of the verdict of guilty rendered against the defendant. The charge as a whole was fair and full, and correctly stated the law governing the issues raised by the evidence, and there was no error in refusing to grant a new trial. LITTLE, J., dissenting.

Argued June 17,—Decided July 18, 1901.

Indictment for murder. Before Judge Falligant. Chatham superior court. May 8, 1901.

Sylmon Barnes, alias Sam Simmons, was charged with the murder of John Wallander, was found guilty, and excepted to the refusal of a new trial. The evidence for the State tended to prove, among other things, that the accused accosted Wallander and Lowell, sailors, on a street in Savannah, in the part of that city known as Yamacraw, after midnight of a Saturday, and proposed to show them "something good," if they would pay him twenty-five cents. The offer was accepted and the money paid him, and he escorted them to a house kept by Margaret Price, which they entered. The accused then demanded another quarter, which was refused. A quarrel ensued, the accused drew a pistol, Wallander seized him, they struggled, were told to leave the house, went out, and when upon the sidewalk Wallander was shot, receiving a wound which caused his death. The prisoner set up the defense of an alibi. In addition to the general grounds, the motion for a new trial offers affidavits as containing newly discovered evidence, and assigns the following as errors of the court:

In charging the jury: "If you have a reasonable doubt of his guilt as to the crime of murder, give him the benefit of that doubt and consider whether he is guilty of the lower grade of crime, the crime of voluntary manslaughter." The error specified is, in limiting the jury to a reasonable doubt of the defendant's guilt of murder, and in not giving him the benefit of every reasonable hypothesis but that of murder. And a like assignment is made on a similar charge as to the consideration of a finding of involuntary manslaughter.

In charging: "If you should find him guilty of the lower grade of crime, your verdict will be: guilty of involuntary manslaughter in the commission of an unlawful act." Error, in withholding from the jury the consideration of a finding of guilty of involuntary manslaughter in the commission of a lawful act, and in intimating that the defendant's act was unlawful.

There was testimony that Wallander said to the accused, while in the house: "If you want to fight, come outside and fight fair; don't fight me with a gun." It is contended that the court should have submitted to the jury, in connection with the law of manslaughter, the consideration of whether the homicide resulted from an offer of the deceased of mutual combat, and whether the killing happened upon a sudden affray, in a heat of passion, and in consequence of a sudden, violent attack by the deceased upon the defendant.

In not fairly submitting to the jury the following phases of the case, favorable to the defendant, which it is contended were presented by the evidence for the State: (a) That the homicide may have been involuntary manslaughter in the commission of a lawful act, or justifiable. (b) That it was due to an assault by the deceased, or by one accompanying him, upon the defendant. (c) That it may have occurred by reason of a sudden heat of passion produced by an attack upon the defendant by the deceased or by one with him. (d) That it happened during a mutual combat offered by the deceased, wherein it became necessary to take his life in order to save the defendant's life. (e) That there were circumstances which made the homicide less than murder.

In charging the jury as set forth in the opinion following. The errors specified are: (a) Requiring the prisoner's statement to be considered in connection with the testimony. (b) Requiring the jury to find it to be consistent and true before believing it in preference to the testimony. (c) Requiring them to consider it in connection with the testimony and to test it in the light of that testimony. (d) Not stating whether the statement must be consistent of itself or consistent with the testimony, or both. (e) Contravening the prescribed policy of the law with reference to the statement. (f) Declaring a different rule from that of the code, and putting unauthorized limitations upon the consideration of the statement by the jury, and thus depriving the prisoner of a right

conferred on him by law. (*g*) Depriving him of a privilege which should be strictly followed. (*h*) Not strictly following the rule prescribed by the code section.

The newly discovered evidence is, in substance, as follows: (1) Cuffy Butler, a witness for the State at the trial, told Amelia Wilson, on Sunday morning after the shooting, that he shot at a white man on the Saturday night before the conversation with her. (2) He told Sallie Williams, on the twentieth day after that of the shooting, that he knew Sylmon Barnes had no pistol on the night of the shooting of John Wallander; that he (Butler) had been shooting his pistol all during that night; that he did not see Barnes at any time that night go to the Price woman's house; that he only said that Barnes went back to the Price woman's house because he was afraid she and her daughter and Bunyon Champ would turn State's evidence against him and throw the shooting on him; that the reason he gave his testimony on the trial as he did was because he was afraid the crime would be fastened on him; that the fighting between the bushy-headed negro and Barnes occurred between six and seven o'clock in the evening, and none occurred after the shooting; and that all the fighting he saw occurred between six and seven o'clock. (3) Eddie Morgan, who lived next door to Maria Price in Yamacraw, told Joe Lee that Pickey Robinson loaned Bunyon Chance a pistol Saturday night when the sailor was shot at Maria Price's house, and Sunday morning when he went for the pistol two loads had been fired from it, and as soon as Bunyon made Pickey mad Pickey would squeal on him, as he believed Bunyon was the man that killed the sailor, and that some day when he made him mad he would come out with it.

*G. T. & J. F. Cann* and *R. L. Colding*, for plaintiff in error.

*J. M. Terrell*, attorney-general, and *W. W. Osborne*, solicitor-general, contra.

LITTLE, J. We have carefully gone over the grounds of the motion for a new trial in this case, and the brief of evidence contained in the record; and a majority of the court are of the opinion that the trial judge committed no error in overruling the motion for a new trial. I dissent from the conclusion reached by my brethren, and am of opinion that the verdict should be set aside and a new trial granted, solely because of an error committed by the trial

judge in his charge to the jury. In the 12th ground of the motion for a new trial it is averred that the court erred in charging the jury as follows: "The prisoner has the right to make a statement not under oath. It is your province and duty to consider his statement in connection with the sworn testimony in the case, and give it such weight as you think proper. If you find the statement consistent and true, you have the right to believe it in preference to the sworn testimony in the case. You should do so not carelessly and capriciously, but under your oath as jurors, considering the statement in connection with the sworn testimony in the case, and testing it in the light of that testimony, giving it such weight as you think proper. That is a matter exclusively for your determination." I felt it my duty in the case of *Keller* v. *State*, 102 *Ga.* 506, when it was before this court for consideration, to enter my dissent to the correctness of a similar charge; and in the case of *Smalls* v. *State*, 105 *Ga.* 670, when a like charge in relation to the prisoner's statement was before this court for review, I was again impelled to dissent to so much of the ruling of the court as approved that charge. Subsequent reflection has but served to confirm the views which I entertained when those cases were considered, that the charge given was erroneous; and that, under it, the defendant was deprived of a material legal right—to have his statement weighed by the jury and given such weight as they may consider it to be worth, without testing the correctness of it by the evidence in the case, and to have the jury accept the same, if they believe it to be true, regardless of the question whether it is consistent with the evidence or with itself. In other words, our law allows a defendant charged with a crime to make just such statement as he chooses, and it gives the jury the right to reject the evidence if it is inconsistent with this statement, and believe the latter if they choose to do so. The right to make a statement in criminal cases is, in my opinion, an unwise provision of law, and serves no good purpose. Some of the States permit a defendant charged with crime, at his option, to be sworn as a witness in the case, subject to cross-examination, and to the penalties prescribed for perjury; and I can but believe that the interests of justice would be better subserved if, in place of the statement, this privilege were by law granted to defendants in criminal cases. But so long as the present law remains on our statute books it becomes my duty to

enforce it as I understand it; and believing that the charge of the court restricted the jury in their absolute right to accept the statement in preference to the evidence, the giving it was error for which a new trial ought to have been granted.

*Judgment affirmed. All the Justices concurring, except Little, J.*