## FLANNIGAN *v.* THE STATE.

1. Where the State offered the evidence of a witness who testified to an occurrence involving an angry altercation and a violent "scuffle" which took place at night near the residence of the witness, and where the nature of this altercation and the sayings of the parties thereto in the course of the same were material facts for the consideration of the jury, the court properly admitted this evidence, although the witness was not able to identify the participants in the altercation; inasmuch as the evidence of other witnesses tended to identify them and to show that the deceased and the accused, who was charged with the offense of having unlawfully killed the former, were two of the persons taking part in the altercation.

2. Where two persons were engaged in an altercation and a "scuffle" in the course of which one inflicted upon the other a wound with a knife, from which wound death resulted, upon the trial of the slayer charged with the murder of the deceased it was competent (proper foundation having been laid for the introduction of dying declarations) to show that the deceased, while in articulo mortis, and being conscious of the fact, said that "they [the deceased and the accused] were not fighting;" the nature of the struggle or scuffle between the deceased and the accused being in question and the accused insisting that the infliction of the wound was purely accidental.

3. The court did not err in excluding evidence offered for the purpose of showing that the accused did not flee after the homicide, although he had full opportunity of flight.

4. The court did not err in charging: "If you find in this case a homicide is proved to have been committed by the person charged, with an instrument which the jury find was, in the manner in which it was used on the occasion in question, a weapon likely to produce death, the law, from the use of such weapon in that manner, presumes malice and the intent to kill;" there being evidence sufficient to authorize the finding of the homicide unaccompanied with circumstances of mitigation or exculpation.

5. The question as to whether or not the court should have given in charge the law of involuntary manslaughter is not properly raised in the motion for a new trial.

OCTOBER 11, 1910.

Indictment for murder. Before Judge Morris. Cobb superior court. May 31, 1910.

*Clay & Morris,* for plaintiff in error. *H. A. Hall, attorney-general, J. P. Brooke, solicitor-general,* and *J. Z. Foster,* contra.

BECK, J.   Johnson Flannigan was tried upon an indictment charging him with the offense of murder; it being charged that he killed one Willie Jackson, by cutting him with a knife, under circumstances that made the killing murder.   The accused did not deny the infliction of the wound upon the deceased with his knife, from the effects of which the deceased came to his death, but he contended that the cutting was accidental; that he and the deceased and another person were in a playful "scuffle" over the knife; that while the deceased was trying to take it away from him in the scuffle he was accidentally cut.   The State contested this theory of the killing as set up by the defense, and introduced evidence to show that there was an angry altercation between the deceased and the defendant, and that the defendant intentionally inflicted the wound which caused the death of the deceased.   On the trial the jury returned a verdict of guilty, with a recommendation.

1.  Error is assigned upon the ruling of the court in admitting evidence relative to a certain "disturbance" on the night of the homicide, and at about the hour at which the deceased received the fatal wound, on the ground that it was not shown "that it was the same disturbance in which the accident took place, nor is it shown that the defendant was connected with the same."   The court properly admitted this testimony.   While the witness whose testimony was objected to could not state who were engaged in the quarrel and "disturbance" concerning which she gave testimony, facts and circumstances were shown by the testimony of other witnesses from which the jury would have been authorized to find that the accused and the deceased, together with another person, formed a party of two or three who were engaged in an altercation and scuffle at the time and place to which the witness referred in the testimony objected to.

2.  Error is assigned upon the ruling of the court in excluding the testimony of a certain witness as to the dying declarations of the deceased which related to the cause and circumstances of the homicide.   After the introduction of evidence showing that the deceased was in articulo mortis, and that he was conscious of his condition, the witness whose testimony was excluded was asked: "Did you or not ask him questions in regard to the accident?" and he answered, "Yes, sir; I asked him if they were

fighting. Q. What did he say? A. He said, no. Q. Was that question asked him after he said he was in a dying condition? A. Yes, sir." This testimony was excluded by the court on the ground that the testimony of the witness, in which the deceased was stated to have said "they were not fighting," was opinion evidence and not admissible upon that ground. That the evidence itself was vitally material to the defense can not be doubted. He had slain one to whom he apparently bore the most friendly relations. He exhibited grief after the discovery of the wound which he had inflicted. He helped to procure aid and medical attention for the wounded man. He insisted that the infliction of the wound was purely accidental, during a friendly "scuffle;" while a part of the evidence for the State tended to show that the deceased and the accused were engaged in a fight at the time of the infliction of the wound. While in articulo mortis the deceased said that they were not fighting. It is manifest that the evidence of this declaration was very material; and we can not agree with the trial judge in his conclusion that this was opinion evidence. The accused was entitled to have this important fact submitted to the jury for their consideration, and it was harmful error for the judge to exclude it.

3. The court did not err in excluding evidence offered for the purpose of showing that the accused did not flee after the homicide, although he had full opportunity of flight. *Lingerfelt* v. *State,* 125 *Ga.* 4 (53 S. E. 803).

4. The court did not err in charging: "If you find in this case a homicide is proved to have been committed by the person charged, with an instrument which the jury find was, in the manner in which it was used on the occasion in question, a weapon likely to produce death, the law, from the use of such a weapon in that manner, presumes malice and the intent to kill;" there being evidence sufficient to authorize the finding of the homicide unaccompanied with circumstances of mitigation or exculpation.

5. The question as to whether or not the court should have given in charge the law of involuntary manslaughter is not properly raised in the motion for a new trial.

*Judgment reversed. All the Justices concur.*