21575. FAULKNER *et al.* v. THE STATE.

DECIDED SEPTEMBER 4, 1931.

*M. G. Hicks, Leward Hightower, Durwood T. Pye,* for plaintiffs in error.

*Claude C. Smith, solicitor-general,* contra.

Luke, J. The indictment in this case charges J. B. Faulkner, W. I. Sims, and Walter Sanders with making intoxicating liquor. The defendants were tried jointly and convicted. Sanders made no appeal, but Faulkner and Sims duly excepted to the judgment of the court overruling their motion for a new trial.

It appears from the record that at about noon of a certain day some officers found a furnace and some of the material parts of a still in Sims's hog pasture, about sixty or seventy-five yards from his residence, and that the other parts of the still were found near by and in Sims's residence and crib; that the barrels and vat smelled of mash, and the vat had some mash in it; that coke was found in the furnace, and two sacks of coke were found near by; that the furnace was warm and "some steam was found there;" that the still "had just been used and torn down," and that there was every indication that whisky had been made there; that Faulkner was found undressed in a bed in Sims's house, and that when he was "roused up" he gave his name as "Foster;" that a pair of trousers and a pair of overalls that were found near the bed Faulkner was in were "wet and had still-beer on them;" that the other defendant, the negro Sanders, was also found undressed in a bed in Sims's house, with wet clothes by the bed he was in, that had on them the odor of beer; that Sims, who was found on the premises, stated that he knew nothing about the still, but that "the parties that were at the still left there at 3:30 that morning," and that if the officers had come two hours earlier they "would have caught the men at the still;" that nine gallons of whisky that was warm was found hidden a few yards from the still; and that none of the defendants was seen at the still, and no whisky was being made on it. The defendant Sims, in his statement at the trial, said merely that he was a law-abiding citizen sixty-three years old, and that he was not guilty. Faulkner stated in substance that he came to Sims's house with another man, who wanted Sims to do some work; that this man went off to see some one and left Faulkner at Sims's house; that he went to bed there because he was suddenly taken sick; and that he did not know anything about the still. Sanders stated that he was working for Sims, and that he knew nothing about "the liquor part of it." We are well satisfied that the evidence was sufficient to sustain the conviction of Sims and Faulkner for the offense charged.

■ We come now to the first special ground. It appears that when the State offered Mrs. Sims, the wife of W. I. Sims, as a witness, this objection was interposed: "This is the wife of the defendant W. I. Sims, and she can not testify." The court over-ruled the objection, in this language: "She can not testify for or against her husband, but she is competent to testify as to the other defendants." The testimony given by Mrs. Sims follows: "I know this negro boy, Walter Sanders. He worked for us. This boy has been here with us off and on ever since Christmas. He just came there and worked for us for a place to stay. I don't remember the date the officers came there when Mr. Faulkner was there, but it was Friday; that is the day of the week it was. This boy, the night before that, was in there by the fire-place when I went to bed is all I can tell you. I can not tell you how long Mr. Faulkner had been in my home before the officers came. I went out to attend to my cow, and when I came back he was there by the fire. That was the first time I had seen him that day, but he had been there several times before. He was not there the day before the officers came. I didn't see him around the house, and did not see him that night before. I can't tell you how long it was before that that I had seen him. He didn't live there at the house with us. I don't know as I did hear him say any-thing about making whisky. He did not occupy a bed in my house the night before the officers came. I can not tell you how long he had been in bed before the officers came. I told him to go in and lie down, and I went on about my house affairs, and so I don't know how long he had been in bed when the officers came. I had been seeing Faulkner off and on for the past three or four years, just in passing. When he said he was sick and I told him to lie down, I asked him what was the matter, and he said he was sick, he had a headache; and that was all I heard him say. All I did to relieve him was to give him some soda-water and a head-ache tablet—that was all I did for him."

Section 1037 (4) of the Penal Code of 1910 reads as follows: "Husband and wife shall not be competent or compellable to give evidence in any criminal proceeding for or against each other, except that the wife shall be competent, but not compellable, to testify against her husband upon his trial for any criminal offense committed, or attempted to have been committed, upon her person,

She is also a competent witness to testify for or against her husband in cases of abandonment of his child, as provided for in section 116 of this Code." In the case of *Rivers* v. *State*, 118 *Ga.* 42 (44 S. E. 859), Rivers was jointly indicted with Anna M. Herron and one Gibbes for knowingly renting a house for gambling purposes. Rivers was separately tried. It was contended that the court erred in allowing the husband of Mrs. Herron to testify in the case. We quote from the opinion in that case: "In criminal cases neither husband nor wife is competent or compellable as a witness for or against the other; but where neither is a party to the case on trial, the husband or wife is not necessarily incompetent, although the testimony may furnish the means by which the husband or wife may be prejudiced on another trial, for the Penal Code, § 1011, par. 4, does not apply in terms to such cases, and the evidence may be received notwithstanding such possible results. . . There was a joint indictment; and had there been a joint trial, the husband could not have testified for or against the wife. There had been a severance, however, and the husband was not incompetent to testify on the separate trial of Rivers. *Whitlow* v. *State*, 74 *Ga.* 819; *Williams* v. *State*, 69 *Ga.* 13 (15); *Askea* v. *State*, 75 *Ga.* 356; *Ficken* v. *State*, 97 *Ga.* 814 [25 S. E. 925]. See also *Thomas* v. *State*, 115 *Ga.* 236 [41 S. E. 578]. . . Where the offense charged requires the joint act of the persons indicted, in order for either party to be guilty, then the husband or wife would not be competent to testify against such joint defendant, even if there was a severance on the trial. *Howard* v. *State*, 94 *Ga.* 587 [20 S. E. 426]."

Of course the *Rivers* case differs from this case in that there the defendant was separately tried. We think, however, that the construction there of the statute we are considering is both interesting and serviceable. Where, as in this case the witness does not come within any exception to the statute, it occurs to us that the statement that "husband and wife shall not be competent or compellable to give evidence in any criminal proceeding for or against each other" fixes the rule with considerable precision. Our conclusion is that in this case the trial judge correctly interpreted the statute in ruling that Sims's wife could not testify for or against her husband, but could testify as to the other defendants. We are also of the opinion that the testimony given by the witness was

not either for or against her husband. In this connection it may be observed that the offense charged did not require the joint act of the persons indicted.

■ Special grounds 2 and 3 are not insisted upon. Special ground 4 complains of this charge: "A reasonable doubt means just such a doubt as a reasonable man would have after he had heard all the testimony in the case, including the statement of the defendant." The criticism of the charge is that it was "vague, indefinite, uncertain, and of no meaning whatever, . . the jury being compelled to believe that the term 'reasonable doubt' had no meaning." Obviously the objection to the charge is itself rather indefinite. However, we shall pass upon the ground. "It is very seldom that an amplified definition of 'reasonable doubt' elucidates the meaning of these simple words. In the absence of a request that fuller instructions be given the jury upon the subject, it is sufficient if they be told that they must be satisfied of the guilt of the defendant beyond a reasonable doubt; for the words 'reasonable doubt' are so plain in their meaning that he who runs may read, and he who reads may understand." *Middleton* v. *State*, 7 *Ga. App.* 1, 3 (66 S. E. 22). See also *Clay* v. *State*, 4 *Ga. App.* 142 (4-c) (60 S. E. 1028); *Jackson* v. *State*, 19 *Ga. App.* 621 (3) (91 S. E. 923). In *Peterson* v. *State*, 47 *Ga.* 524 (5), the court held: "It is not error in a murder case for the court to charge that 'a reasonable doubt is such as an upright man might entertain in an honest investigation after truth, from the evidence.'" See also *Richards* v. *State*, 30 *Ga. App.* 267, 268 (117 S. E. 759). The charge here complained of illustrates the holding of the courts of this State that it is very difficult to make plainer by definition the meaning of the words "reasonable doubt." We are satisfied, however, that the court's charge did not dim the obvious meaning of "reasonable doubt" or confuse the jury.

■ Ground 5 alleges error in charging that "direct evidence is that which immediately points to the question at issue," for the reason that the case depends entirely upon circumstantial evidence. The charge given is part of section 1009 of the Penal Code (1910), and was given in connection with the definition of circumstantial evidence. In *Wilburn* v. *State*, 141 *Ga.* 512 (81 S. E. 445), this ruling was made: "It was not cause for a new trial that the court, in defining circumstantial evidence and instructing the jury

as to the law on that subject, in the same connection gave the jury the definition from the code of 'sufficient evidence,' 'cumulative evidence,' 'direct evidence,' and 'presumptive evidence.'" There is no merit in this ground.

■ Ground 6 alleges that in charging the jury in practically the language of the Penal. Code (1910), § 1010, the court told them that "the proven facts must not only be consistent with the hypothesis of guilt, but *should* exclude every other reasonable hypothesis save that of the guilt of the accused." It is insisted that this code section uses the word "must" where the court employed the word "should," and that the use of the word "should" by the court "was calculated to create in the minds of the jury the impression that they might, if they saw fit, convict on circumstantial evidence alone, whether the circumstantial evidence excluded every other reasonable hypothesis or not." It is perfectly apparent that the criticism is hypercritical, and that the defendant was not injured by the charge.

■ Ground 7 complains of this charge: "If you believe that the State has made out its case from the evidence, and under the instructions I have given you, you would be authorized to find the defendant, or defendants, guilty, according to the instructions I have given you and the opinion you entertain of the evidence." It is insisted that this charge "removed from the consideration of the jury . . the statements made by the defendants." The judge charged the law of "reasonable doubt," and specifically applied that doubt to the defendant's statement. See the excerpt complained of in special ground 4, supra. He also charged fully and correctly the law governing a defendant's statement to the jury. We hold that the charge is not erroneous for the reason assigned.

■ It appears from ground 8 that the court charged as follows: "It is against the law of this State for any one to distil, manufacture, or make alcoholic, spirituous, vinous, and mixed liquors and beverages part of which *were* alcoholic." The contention is: "Said charge was error for the reason that it is not contrary to law to manufacture liquors which *were* alcoholic, the defendants not being charged with so doing, but being charged with manufacturing liquor which *was* alcoholic; that is converting nonalcoholic substances into liquors." The criticism is quite hypercritical and does not reasonably indicate that the accused

persons, or any one of them, could have been injured by the charge as given. There is no merit in the ground.

■ The ninth and last ground complains that in the charge the court gave the jury the definition of principals in the second degree as contained in the Penal Code (1910), § 42. It is contended: (1) that the indictment did not authorize the charge, (2) that the evidence did not authorize the charge, and (3) that the charge "amounted to an expression of opinion on the part of the court that the defendants, or one or more of them, had in fact stood by and aided in the commission of the alleged crime."

"A principal in the second degree may be convicted under an indictment charging him as principal in the first degree." The foregoing quotation from the headnote in *Morris* v. *State*, 26 *Ga. App.* 60 (105 S. E. 380), is a concise statement of the rule approved by both the Supreme Court and the Court of Appeals. "When principals in the first and second degrees are punished alike, no distinction between them need be made in the indictment. The act of one is the act of all." *Morgan* v. *State*, 120 *Ga.* 294 (48 S. E. 9), quoting *Leonard* v. *State*, 77 *Ga.* 764, and citing *Collins* v. *State*, 88 *Ga.* 347 (14 S. E. 474), and *Nobles* v. *State*, 98 *Ga.* 77 (26 S. E. 64, 38 L. R. A. 577).

Headnote 2 in *Bradley* v. *State*, 128 *Ga.* 20 (57 S. E. 237), is: "As principals in the first and second degrees in the crime of murder are punished alike, no distinction between them need be made in the indictment." Obviously there is no merit in the criticism that the indictment did not authorize the court's charge.

We doubt the applicability to the evidence of that part of section 42, supra, relating to "constructive presence;" still we do not think that reading to the jury that entire code section was injurious to the defendant, or that, under the evidence in the record, it is cause for a new trial. We are well satisfied that the charge did not express any opinion of the court that one of the defendants "stood by and aided in the commission of the alleged crime."

In conclusion, we hold that for no reason assigned did the trial judge err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*