## DUNSON *v.* THE STATE.

No. 15840.  JUNE 12, 1947.  REHEARING DENIED JULY 11, 1947.

*Duke Davis, A. J. Andrews,* and *Blake Jackson,* for plaintiff in error.

*Eugene Cook, Attorney-General, Paul Webb, Solicitor-General, J. Walter LeCraw, J. R. Parham,* and *Margaret Hartson,* contra.

JENKINS, Chief Justice. (After stating the foregoing facts.) 1. The defendant contends that his conviction rested solely upon circumstantial evidence and that the State failed to prove that the deceased met death as the result of some direct criminal agency. Counsel for the defendant advance the theory that the deceased could have reached for the gun with her left hand, and could have accidentally discharged it by dragging the hammer backwards across the side of the bed. It is contended that this theory of the case, when taken in connection with the physical facts as shown by the evidence and the photograph in evidence as to the nature of the wounds and the position of the body, and the insistence by the defendant that the deceased shot herself, lends itself more readily to the hypothesis of innocence than that of guilt. While it is true that this theory might suggest a means within the bounds of possibility whereby the deceased could have discharged the gun, it still can hardly be said to furnish a reasonable explanation as to how the buckshot could have struck the outside of the right arm below the tip of the shoulder and ranged forward and upward into the right temple, if the gun had been discharged in the manner suggested. It would, to say the very least, have been a most awkward and difficult position for the deceased to have assumed, con-

sidering that she was found lying in the middle of the bed with her hands resting by her side, and with the cover pulled up to her waist. It is not suggested that the gun could have possibly been held in her right hand. To have reached out over her body with the left hand and taken the gun, standing against a drawer on the right-hand side of the bed so as to drag the hammer across the bed covers, with the muzzle pointed at the same time at the arm below the right shoulder and the right temple, would have been a most difficult thing to do. While it is also true that it would be hard, if not impossible, to visualize the defendant thus aiming the gun from his *shoulder* and inflicting the two wounds as thus made while standing in an *erect* position with the deceased lying flat on her back in the middle of the bed, it is nevertheless easy to see how such wounds could have been inflicted by the defendant, had the sawed-off shotgun been held close to the deceased from the vicinity of his hips, and at or about the level of the body of the deceased, or had he knelt down when the gun was fired. It will be seen from what has just been said that the defendant's theory as to the manner of the homicide is at best merely a conjecture coming within the bounds of a very remote possibility. It is not necessary, however, in order to sustain a verdict of conviction, that the evidence exclude every possibility or every inference that may be drawn from the proved facts, but only necessary to exclude reasonable inferences and reasonable hypotheses. *Wrisper* v. *State,* 193 *Ga.* 157, 164 (17 S. E. 2d, 714), and cases there cited. Moreover, the theory now suggested by the defense is in total conflict with the evidence as to what the defendant said immediately after the death of the deceased, that is, that she was playing with the gun when it went off. Neither does the theory suggested by counsel well comport with the testimony of a witness that, when persons first went into the room, the defendant was found holding the sawed-off shotgun with the lock unbreeched. The evidence of this witness, as will be seen by an examination of all this testimony, is not contradicted either by his own testimony, or by that of any other witness. The other witnesses who first entered the room testified that they looked first at the deceased woman and did not see the defendant or the gun at first. That one of these later testified that he did not see the defendant with the gun at the foot of the bed, but saw him pick it up and say that she shot

herself with it, conforms entirely to the evidence of the witness who saw the gun in the defendant's hand at the foot of the bed, and who testified that the defendant put the gun down and later picked it up and showed how the deceased shot herself. And then too it must be considered that the defendant had made three contradictory and unreconcilable statements as to the facts surrounding the shooting, including the statement that the deceased was playing with the gun when it went off, and that it was shown that the defendant had made previous threats to shoot her, and had recently broken down the door of the kitchen where she had fled and stabbed her in the arm. There was also proof of other cruel treatment. All these facts, together with the refusal of the defendant to promptly answer and open the door when called, seem to preclude a holding that the circumstances were insufficient to overcome any reasonable inference of accidental death or suicide. It unmistakably appears that, if a homicide was committed, the defendant committed it. It therefore follows that the evidence authorized the verdict and the general grounds of the motion for new trial are without merit.

2. The first ground of the amended motion for new trial is as follows: "Because the following material evidence was illegally admitted by the court to the jury over the objection of movant, to wit: 'Q. Where was the first time you saw it (the gun) in his hand? A. I saw it the first time when he was running away from home with the shotgun. Q. He was running away from home with the shotgun? A. Yes, sir.'" The objection urged was that this testimony was too remote in time to be illustrative of any issue in the case. Irrespective of any question as to completeness of the above testimony in order to show error, since it is an excerpt from testimony by the defendant's son and related to an altercation between the defendant and the deceased some three weeks prior to the homicide, in which the son testified that his father had stabbed his mother (deceased) in the arm, "and told her he was going to blow her God damned brains out," such evidence of threats and cruelty, and that the defendant was then in possession of the gun, was relevant to show malice, and the court did not err in admitting it over the objection urged. *Parker* v. *State*, 197 *Ga.* 340 (4) (29 S. E. 2d, 61).

3. The second and third special assignments of error complain of the refusal by the court to permit two of the State's witnesses to answer the following questions on cross-examination: " 'Where was your father when the ambulance was called?' The answer would have been, 'He was in there in a chair.' The second witness was asked, 'Who called the ambulance?' The answer would have been, 'Annie Howell is the one that called him.' " The defendant contends that the answers to these questions would have rebutted any presumption of malice toward the deceased, and would have shown an absence of motive, and that both answers were admissible as a part of the res gestae. These assignments of error are without merit. The first answer could illustrate nothing more than the fact that the defendant did not flee after the homicide, and since there is a complete absence of any testimony that he had attempted to flee, evidence offered for the purpose of showing that he did not in fact flee was properly excluded. *Flannigan* v. *State*, 135 *Ga.* 221 (3) (69 S. E. 171); *Lingerfelt* v. *State*, 125 *Ga.* 4 (2) (53 S. E. 803, 5 Ann. Cas. 310). As to the second answer, there was already clear and undisputed evidence as to the circumstances surrounding the calling of the ambulance, and under no view of this evidence can it be said that, merely because it corroborated a statement made by the defendant before the jury, its exclusion was harmful to the defendant.

*Judgment affirmed. All the Justices concur, except Wyatt and Head, JJ., who dissent.*

WYATT, J., dissenting. Pictures of the body of the deceased were in evidence, showing the location of the wound in the arm. It is my opinion, from what the pictures and other evidence showed, that if the defendant shot the deceased he would have had to be in a position lower than the position of the deceased on the bed. In order for him to have been in this position, it would have been necessary that he be either on his knees or in a reclining position. I do not think that the evidence in this case was sufficient to remove every reasonable hypothesis other than the guilt of the accused. I therefore dissent.