## 45291. NORMAN v. THE STATE.

EBERHARDT, Judge. 1. "In an indictment for simple larceny it is not necessary to state the location of the property or the place from which it was taken and carried away, further than to state that it was in the county in which the court had jurisdiction, unless a statement of the location is a descriptive averment essential to the identification of the property alleged to have been stolen." *Gibson v. State,* 13 Ga. App. 67 (b) (78 SE 829); *Kyler v. State,* 94 Ga. App. 321 (1) (94 SE2d 429). Consequently, a demurrer to an indictment charging larceny of two turkeys on the ground that the indictment "fails to allege the place at which said crime is alleged to have been committed" was properly overruled. Moreover, it is to be observed that the warrant on which the defendant was arrested asserted that the turkeys were taken from the "farm of Dan McAvoy, 169 G.M.D. Washington, Wilkes County, Georgia."

2. When the rule of sequestration of witnesses is invoked by a defendant it is the duty of the court to enforce the rule. *Code* § 38-1703. However, the court may, in its discretion, permit the prosecutor in the indictment to remain at the State's counsel table to assist in the trial of the case, even though he may be used as a witness. *Swain v. State,* 151 Ga. 375 (2) (107 SE 40); *Keller v. State,* 102 Ga. 506 (31 SE 92); *Hudgins v. State,* 13 Ga. App. 489 (2) (79 SE 367).

While the indictment was by special presentment of the grand jury, the owner of the turkeys alleged to have been stolen occupies a position similar to that of a prosecutor, and it does not appear that there was any abuse of discretion in allowing him to remain in the courtrooom during the trial for the purpose of assisting State's counsel.

3. An exception to a charge on the impeachment of witnesses, condeded to be abstractly correct, on the ground that "the court did not go further and charge the jury the requirements of law relative to the impeachment of a witness [by charging] the specific methods by which a witness could be impeached," is without merit. In his motion for new trial defendant asserts that "there was no evidence offered to impeach the witness by disproving the facts he had testified to, no evidence that the witness had made any contradictory statements, and no evidence of his bad character." If there was no evidence

as to them, it was certainly not incumbent upon the court to charge relative to these methods of impeachment, for it is the duty of the court to adjust the charge to the evidence. *McGirt v. State,* 125 Ga. 269 (2) (54 SE 171); *Millen & Southwestern R. Co. v. Allen,* 130 Ga. 656 (5) (61 SE 541). On cross examination of Lacy Hampton, a witness for the defendant, he admitted that he had been convicted of murder and had served a sentence therefor. Evidence of the conviction of a witness for a crime involving moral turpitude is admissible[1] and the jury is authorized to consider it for the purpose of discrediting his evidence, and it is not error in such a case for the court to charge generally on the impeachment of witnesses, omitting the specific methods found in *Code* §§ 38-1802, 38-1803, 38-1804. *Ford v. State,* 92 Ga. 459 (17 SE 667).

4. It is never error to refuse to direct a verdict of not guilty in a criminal case. *Pritchard v. State,* 224 Ga. 776 (2) (164 SE2d 808); *Casey v. State,* 119 Ga. App. 114 (1) (166 SE2d 438).

5. While it is asserted in the amended motion for new trial that a request to charge was orally submitted to the court and no written request is to be found in the record, the recital in the motion for new trial will prevail over an assertion in an enumeration of error that "the same was requested in writing." There is no error in the denial of a request to charge unless it is made in writing and submitted in accordance with the provisions of § 17 (b) of the Appellate Practice Act (*Code Ann.* § 70-207 (b)). *Gilmore v. State,* 117 Ga. App. 67 (1) (159 SE2d 474). An oral request that the court charge an excerpt from a decision of the appellate court does not meet this requirement.

Moreover, if the request had been in proper form we should find no error. The excerpt to which counsel referred in the request was from *Smith v. State,* 185 Ga. 365, 368 (195 SE

---

[1]The judgment of conviction was the highest and best evidence of that fact (*Howard v. State,* 144 Ga. 169 (2) (86 SE 540); *Edenfield v. State,* 14 Ga. App. 401 (81 SE 253); *Duke v. Meyers,* 86 Ga. App. 271 (71 SE2d 297); *Rewis v. State,* 109 Ga. App. 83, 85 (134 SE2d 875)), but the evidence was unobjected to and, as secondary evidence, was competent proof of the conviction. *Rushin v. State,* 63 Ga. App. 646, 648 (11 SE2d 844).

144), which, in turn, was taken from *McLendon v. State*, 121 Ga. 158 (48 SE 902): "In order to sustain a conviction of larceny, the evidence must make out the description of the stolen property as laid in the indictment or accusation, although such description may have been unnecessarily minute." While not in the same language of the requested excerpt, we think the principle was amply covered when the court charged: "The burden is upon the State to prove every material alllegation in this bill of indictment or special presentment against this defendant, to a moral and reasonable certainty and beyond all reasonable doubt," which followed a reading from the indictment of the statement of the offense charged, including the description of the property alleged to have been stolen.

The charge was that the defendant did "take and carry away, with intent to steal the same, two (2) live, bronze turkeys, weighing 20 lbs. each, of the value of $12.00 ($6.00 each), and of the personal goods of Gene Callaway," as to the sufficiency of which see *Love v. State*, 69 Ga. App. 411 (1) (25 SE2d 827). Dan McAvoy, a witness for the State, testified that he farmed and raised bronze turkeys for Gene Callaway, and that those alleged to have been taken by the defendant weighed anywhere from 20 to 25 pounds each, and were worth around $6 apiece. There was testimony from the owner, Callaway, that the turkeys were bronze, weighed 18 to 20 pounds, and were worth approximately $5 each.

6. Error is enumerated on the judgment overruling defendant's amended motion for new trial. The general grounds are without merit. There was ample circumstantial evidence to authorize a conviction. An automobile was seen stopped alongside the road about 11 o'clock at night near where the turkeys were kept. The witness obtained the tag number and reported it to the sheriff, who checked it out and found the tag to have been issued for a vehicle of the type which the witness had seen, and which had subsequently been acquired by the defendant. The car was located and turkey feathers of the kind coming from Callaway's turkeys were in it. Tire tracks at the place where the car had stopped were of the identical kind made by tires on the defendant's car. There were tracks made by three men leading from the car on the road into the field where the turkeys were located, and back. The wire fence was pushed down, and there was

a trail of feathers along the tracks from the fence back to where the car was parked. Callaway testified that there was only one commercial producer of bronze turkeys other than himself in the State and that he was located at Molena, from 125 to 150 miles away; turkeys grown by others are white. Both prior to and after the occasion when the car was parked alongside the road turkeys were missing from his flock, and they were his property. A check count of the flock indicated that a total of 71 had disappeared over a period of about six weeks. The quantity of feathers found in the defendant's car indicated that there had been more than one turkey in it.

When the car was found with the feathers in it, defendant was arrested and the car was parked near the jail. The sheriff went to it the next morning only to find that somebody had swept it clean during the night and all of the feathers were gone, though defendant was in jail at the time. When he later arranged bond he took the car with him.

Defendant admitted that he had gone out in the area of the turkey ranch on the occasion involved, but asserted that his mission had been to see his employer, who lived out that way, in an effort to borrow some money, and that he had given out of gasoline and that it had been necessary to leave the car parked on the shoulder of the road. He asserted that he walked back to town, bought a dollar's worth of gasoline at a filling station and got his friend, Lacy Hampton, to take him back out to get his car, and that he knew nothing of any turkeys taken from the ranch or of feathers in his car. A service station operator testified that he did, on an occasion along about the time of year of the alleged theft, sell defendant some gasoline in a can, which he took away and later returned, but he could not say whether that was the same date of the alleged theft or not. Hampton testified that the defendant came to where he was parked in the vicinity of the service station and asked to be taken with the can of gasoline out to where defendant had left his car on the road. They got into Hampton's car, rode around for a couple of hours, went to the "Two Spot" and finally out to the car, where the gasoline was transferred to the tank and that the two of them had returned to town with their cars. He saw no turkeys or feathers in the car, but didn't look in the back of the car where the sheriff had seen them.

This evidence was sufficient for affirming the conviction under

rulings made in *McCrary v. State*, 20 Ga. App. 194 (92 SE 954);[2] *Burks v. State*, 92 Ga. 461 (17 SE 619); *Farrar v. State*, 110 Ga. 256 (34 SE 288); *Wrisper v. State*, 193 Ga. 157 (17 SE2d 714); *Faulkner v. State*, 43 Ga. App. 763 (160 SE 117); *Worley v. State*, 91 Ga. App. 663 (86 SE2d 702). "As pointed out by this court in *Dunson v. State*, 202 Ga. 515, 521 (43 SE2d 504), it is not necessary, in order to sustain a verdict of conviction, that the evidence exclude every possibility or every inference that may be drawn from the proved facts, but only necessary to exclude reasonable inferences and reasonable hypotheses." *Williams v. State*, 204 Ga. 837, 842 (51 SE2d 825). "In this case the circumstantial evidence adduced to establish these two essential facts [corpus delicti and identity of property] was extremely weak, but this court can not hold, as a matter of law, that the finding of the jury was unsupported by any evidence; and, the finding having been approved by the trial judge, this court has no authority to interfere." *Edwards v. State*, 24 Ga. App. 653 (2) (101 SE 766).

7. All special grounds of the motion for new trial are made the subject of enumerations of error which we have dealt with above.

*Judgment affirmed. Jordan, P. J., and Pannell, J., concur.*

ARGUED APRIL 8, 1970—DECIDED APRIL 30, 1970—REHEARING DENIED MAY 14, 1970—

*Lawson E. Thompson*, for appellant.
*Kenneth E. Goolsby, District Attorney*, for appellee.

---

[2]Examination of the record in this case reveals that the evidence disclosed that prosecutor had some hogs that "used" an area wherein were found tracks of a mule and wagon which resembled those made by defendant's crippled mule and wagon; that at a wash place near the creek where it had been customary for defendant and his family to cook out lard when hogs were killed was found some blood and hair—the hair being of somewhat the same color as that on the prosecutor's missing hogs—and that a witness had seen the defendant driving his wagon from that direction with some sacks of something—he could not say what—in the wagon bed. Defendant's father, who had long used the same wash place, testified that he had killed some of his own hogs a few days before and had cooked out lard there.

Jordan, Presiding Judge. I concur in the judgment of affirmance reluctantly as to Division 6 of the opinion dealing with the general grounds. The circumstantial evidence presented by the State is weak indeed and would certainly have authorized the defendant's acquittal. By the same token it cannot be said that the verdict of guilty was completely unauthorized, and having the approval of the trial judge, it should perhaps be allowed to stand.