## FAIRFIELD *v.* THE STATE.

1. Loss of the original writing containing a confession of the accused, and which was signed by him, was sufficiently shown to authorize the court to admit secondary evidence.
2. But whether the carbon copy of the original statement could be used as evidence or not, it was not error to allow the witness to testify as to what was said in the confession, after having refreshed his memory by reference to the carbon copy; it appearing that the witness then testified from his memory thus refreshed.
3. While as a rule evidence tending to show that the accused had committed a crime independent of the offense for which he is on trial is irrelevant, nevertheless, where there is evidence tending to show a conspiracy for the purpose of executing and carrying out a criminal scheme, it is competent to prove the existence of the scheme by proof of various acts which constitute an entire series and which show motive and purpose and tend to identify the accused as one of a number of persons engaged in the conspiracy.
4. The defendant was permitted to make his statement in his own defense, as provided by our statute in regard thereto. His counsel subsequenly requested the privilege of having his client go back on the witness stand to make a second statement, which the court refused to allow; and this ruling constitutes one of the grounds of the motion for a new trial. The grant or refusal of the request was a matter resting in the discretion of the court, and the judgment will not be disturbed. RUSSELL, C. J., dissents.

5. Where a defendant offered certain evidence tending to show that statements made by him in the alleged confession were not true and could not be true, the evidence tending to destroy the effect of the confession, and this was rejected at that time, but the defendant after having made his statement was permitted to introduce this evidence thus rejected when first offered, the error in excluding the evidence at first was cured, and the error in rejecting the evidence at first will not require the grant of a new trial, though it may, as counsel for plaintiff in error claims, have disturbed the order in which he desired and would have introduced his evidence.    RUSSELL, C. J., dissents.

6. Under the ruling. made in the first division of the opinion and the authorities there cited, it was not error to admit evidence of an inculpatory statement made by the defendant, to the effect that he was present and. had assisted in causing a wreck upon the railroad some months after the commission of the crime for which he was being tried.

7. Error is assigned upon the following excerpt from the charge of the court: "A confession must be freely and voluntarily made, without the slightest hope of reward or the remotest fear of punishment." This charge is not erroneous. There being evidence of a confession made, the charge was a substantial statement of our statute upon the subject dealt with.

8. The court did not err in admitting evidence of statements made by the accused at the trial of certain other persons charged with the offense for which the defendant was being tried. Had he himself been under arrest for that offense at that time and on trial for the same at the preliminary hearing, the ruling in the case of Adams v. State, 129 Ga. 248 (58 S. E. 822 17 L. R. A. (N. S.) 468, 12 Ann. Cas. 158), would have been applicable and the evidence inadmissible.

9. The other excerpts from the charge criticised were not error for the reasons assigned.

No. 3502. MAY 21, 1923.

Indictment for burning railroad-bridge. Before Judge Gower. Crisp superior court. November 6, 1922.

*C. L. Harris,* for plaintiff in error.

*George M. Napier, attorney-general, J. B. Wall, solicitor-general, Seward M. Smith, assistant attorney-general,* and *Jesse Grantham,* contra.

BECK, P. J. O. C. Fairfield was tried· under an indictment charging him with having, on the 29th day of May, 1921, maliciously burned a railroad bridge of the A., B. & A. Railway Company. The jury trying the case returned ·a verdict of guilty, and he was thereupon sentenced to life imprisonment at hard labor. The accused made a motion for new trial, which being overruled, he excepted.

1-3. The first ground of the amendment to the motion for new

trial relates to the admission, over objection, of the testimony of a witness for the State, one Fountain. In giving his testimony as to the alleged confession, that witness used a copy of a typewritten statement of the confession, made at the time of the confession. The objection to this was that the carbon copy could not be used as evidence, no loss of the original having been sufficiently shown; and that the facts stated in the confession were immaterial and irrelevant, because they related to certain acts and doings of the accused on an occasion not connected with the offense for which he was being tried, and which took place two months subsequently to the date of the alleged crime. It was shown that the original of the statement as reduced to writing had been placed in the office of the superintendent of the railroad; it was searched for and could not be found. The ground of the motion does not show where it could more probably be found than in the office of the superintendent, where it was searched for. The court was authorized to find that the original was lost, and the copy would then have been the best evidence. Moreover, it appears that the testimony of the witness was given after refreshing his memory from the copy. The copy could certainly be used as a memorandum from which the witness could refresh his memory, if the witness could then testify of his own knowledge according to his recollection after refreshing his memory.

Nor was the evidence of the witness inadmissible for the reason urged in the remaining ground of the objection taken,— that it related to acts and doings of a criminal character not connected with the offense for which the prisoner was on trial. Generally such evidence is objectionable and inadmissible. In the case of *Alsobrook v. State,* 126 *Ga.* 100 (54 S. E. 805), it was said: " Evidence of the commission of a crime other than the one charged in the indictment is generally not admissible; but there are exceptions to this rule. Evidence of prior attempts by the accused to commit the same crime upon the victim of the offense for which he stands charged is admissible; or where other offenses committed by the accused tend to prove malice or motive or the like, evidence of other offenses is sometimes admitted. But in all cases where evidence as to the commission of other offenses is admitted, there must be a connection between them and the offense with which the accused is charged. ' To make one criminal act

evidence of another, a connection between them must have existed in the mind of the actor, . . or it must be necessary to identify the person of the actor by a connection which shows that he who committed the one must have done the other.' *Cawthon* v. *State,* 119 *Ga.* 396 [46 S. E. 897], and cit." In the alleged confession the accused had stated that on the night of the 4th of July, which was some two months after the burning of the bridge, " scabs " riding by on an engine had fired into a certain picket post, and before the latter could get themselves together they opened the throttle and hurried down to the shop. There was great excitement next morning, and he, being in charge of the picket line, collected his men and placed them around the picket line at the picket post. Standing alone, what the accused had said in regard to assembling and posting the men after they were fired into by persons denominated as " scabs," who were on the engine on July 4th, would apparently fall in the general rule. But the theory of the State in this case was, that there existed a conspiracy between numerous persons, one of whom was the defendant in this case, to commit acts of violence, which had for their ultimate purpose the prevention of the operation of trains over the railroad of which the burnt bridge was a part, and that in order to effect their purpose, a series of acts both before and after the burning of the bridge, was committed, and there was a continuity in this series of acts that showed that the different acts of violence were connected as parts of a general scheme; and the State introduced evidence tending to establish the existence of conspiracy, and that the defendant in this case was one of the conspirators.

In the case of *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016), the admission of evidence of a criminal act other than that charged in the indictment was held, by the majority of the court, to be admissible. In support of the ruling there made it was said that the evidence admitted over objection tended to show motive and a common scheme or plan of related offenses, and also tended to show the identity of the person committing both of the crimes, the one charged and the other sought to be proved. In the case of *Williams* v. *State,* 152 *Ga.* 498 (110 S. E. 286), it was said: " The general rule is, that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent

from that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible; but to this rule there are several exceptions. Among them is the admissibility of evidence showing or tending to show the commission of crimes other than that for which the accused is on trial, for the purpose of showing motive, plan, or scheme. *Frank* v. *State*, 141 *Ga.* 243 (80 S. E. 1016), and authorities on the subject referred to in both the majority and minority opinions; *Hill* v. *State*, 148 *Ga.* 521 (97 S. E. 442).; 12 Cyc. 405, 410; 1 Michie on Homicide, 714, § 166; Id. 843, § 172."

. In 1 Wharton's Criminal Evidence (10th ed.), 146, is laid down this rule: " When the.object is to show system, subsequent as well as prior, collateral offenses can be put in evidence, and from such system identity or intent can often be shown. The question .is one of induction, and the larger the number of consistent facts, the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate they are a part of the system. In order to prove the purpose and design, evidence of system is relevant; and in. order to prove system, collateral and isolated offenses are admissible from which system may be inferred. Or, where crimes are so mutually connected or interdependent that the proof of one is not coherent without evidence of the other. But to be admissible as relevant under system, the collateral, extraneous, or independent offense must be one that forms.a link in the chain of circumstances and is directly connected with the charge on trial. Such system may be common to all offenses known to the law. Again, there may be like crimes committed against the same class of persons, about the same time, showing the same general design, and evidence of the.same is relevant which .may lead to proof of identity." In 12 Corpus Juris, 634, it is said: " In the reception of circumstantial evidence great latitude must be allowed. The jury should have before them and are entitled to consider every fact which has a bearing on and a tendency to prove the ultimate fact in issue, and which will enable them to come to a satisfactory conclusion. The government has the right to show the whole history of the conspiracy from its commencement to its conclusion. And it is no objection that the evidence covers a great many transactions and extends over a long period of time,

that it may show another crime, that the acts, evidence to show which is offered, occurred some time before the alleged formation of the conspiracy; provided, however, that the facts shown have some bearing on and tendency to prove the ultimate fact at issue. But much discretion is left to the trial court in a case depending on circumstantial evidence, and its ruling will be sustained if the testimony which is admitted tends even remotely to establish the ultimate fact."

4. The 12th ground of the motion for new trial assigns error upon the ruling of the court refusing to allow the defendant to make an additional statement. The defendant had already made his statement. After the State had introduced other evidence, the defendant requested the privilege of making the additional statement. In this ground of the motion for new trial it is not suggested that evidence relating to new and independent facts had been introduced by the State after the defendant made his statement, but it is distinctly recited that the State had introduced "certain rebuttal evidence, and thereupon at the close of such rebuttal evidence the defendant asked leave of the court to make an additional statement for the purpose of explaining certain facts and things that had been brought out and introduced against him, to wit, concerning maps, papers, and letters identified by Lewis." There is no suggestion in the ground of the motion that this evidence of Lewis contained new substantive facts, but, as shown by the language of the motion itself, it was entirely in rebuttal. If the facts testified to by Lewis were new facts and not merely in rebuttal, that could have been stated in the ground of the motion, and should have been so stated if the movant relied upon the ground that new facts had been introduced; and under numerous rulings of this court, it can not go into other parts of the record in order to strengthen and make valid this ground of the motion for new trial. There is nothing shown in this ground to take the case out of the general rule that whether a defendant will be allowed to make a second statement rests in the discretion of the trial court. Of course we recognize the principle that while the allowance of the privilege sought is in the discretion of the court, there may be cases in which a refusal by the court to grant the privilege would be an abuse of discretion. If the court did as a matter of fact abuse the discretion in this particular case, the

ground of the motion should have shown and pointed out the fact or facts upon which the claim of an abuse of discretion is based. When the trial court passed upon this motion for new trial, the question presented for his ruling was made by the ground of the motion as it stands. The only question that this court is to consider is, whether the court committed error in overruling the motion as formulated and presented by the movant; and there is nothing in this ground of the motion to show that the court did abuse his discretion in refusing to allow the defendant to make a second statement. "As the statute gives the accused no right to make more than one statement, whether he should be allowed to supplement it with another is a matter of discretion with the trial court." *Jones* v. *State,* 12 *Ga. App.* 133, 136; *Vaughn* v. *State,* 88 *Ga.* 731 (16 S. E. 64); *Cochran* v. *State,* 113 *Ga.* 736 (39 S. E. 337); *Dixon* v. *State,* 116 *Ga.* 186 (42 S. E. 357); *Pollard* v. *State,* 144 *Ga.* 229 (86 S. E. 1096). "A failure to allow the accused to make a supplementary statement, even where the State, after the accused had made his statement, introduced additional evidence strengthening its case, is not cause for a new trial." *Johnson* v. *State,* 120 *Ga.* 509 (3) (48 S. E. 199), citing *Knox* v. *State,* 112 *Ga.* 373 (37 S. E. 416), where it was ruled: "The question as to whether or not one on trial for a criminal offense, as a matter of right, can make a second statement is no longer an open one before this court. It was decided that the accused has no such right, in the case of *Vaughn* v. *State,* 88 *Ga.* 732. In *Boston* v. *State,* 94 *Ga.* 590 [21 S. E. 603], it was decided: 'It is not matter of right for the accused to make a second statement to the court and jury because the State has introduced additional evidence which strengthens the case against him.'" Holding that it was a matter of discretion with the trial court whether the accused should be allowed to make a second statement, it was said, in the case of *Sharp* v. *State,* 111 *Ga.* 176 (36 S. E. 633), "If this court should ever in any case undertake to say that a judge did in such a matter abuse his discretion, it would have to be an extreme one."

5. In the 5th, 6th, and 7th grounds of the motion for new trial complaint is made that the court sustained objections made by the State to certain evidence offered by the defendant, tending to show that an alleged confession of the defendant which had been

put in evidence by the State was not true. In part, the evidence offered was testimony to show that certain persons whom the defendant had named in his alleged confession as being with him at the time of the commission of the crime were not with him, and could not have been with him, as they were at places other than that of the commission of the crime at the time of its commission. This evidence was objected to by the State's counsel on the ground that it was irrelevant and immaterial "at this stage of the trial, without any denial on the part of the defendant of the alleged confession shown by the State, insisting that the only relevant thing now is whether the confession is true, and until the defendant makes a denial or says the confession was made under circumstances under which the jury ought not to believe it he could not collaterally attack it by showing that this man [the man named in the statement] was not with him, the State not having undertaken to show as a substantive fact that he was there, and the only issue before the jury is whether or not Fairfield [the defendant] did it." When counsel for the defendant had stated his position in regard to the materiality of this evidence, the court had the jury to retire, and the question as to the admissibility of the evidence was argued; and at the end of this discussion the court ruled that the evidence was inadmissible. This ruling is excepted to on several grounds. It is insisted that the evidence was relevant and material; that the ground insisted upon by the solicitor-general, to wit, that the defendant had not denied the confession, was not a good ground for excluding the evidence, and to sustain the contention of the solicitor-general would allow that officer to dictate and control the order in which the defendant introduced his evidence, whereas the defendant had the right to present to the court and the jury all material and relevant facts in regard to the alleged confession, to show whether it was true or false; and to deny him this right at the time when he offered the evidence disturbed the order in which he proposed to introduce his evidence and destroyed the order in which he proposed to conduct the case for defendant. Subsequently the defendant did make a statement denying the confession, and denying that the facts set forth in the alleged confession were true. After this statement the defendant was allowed to introduce the evidence which he had formerly offered to introduce. Conceding that the court erred

in refusing to admit the evidence when it was first offered, we are of the opinion that when he subsequently permitted the defendant to introduce it the error was cured. This has been ruled more than once, and cases sustaining the proposition are familiar.

6-7. The rulings made in headnotes 6 and 7 require no elaboration.

8. Other persons, Thomas, Bishop, and Hall, were arrested for the burning of the railroad bridge soon after the event. They were brought before a committing magistrate for a preliminary hearing, and the prisoner in this case, under arrest for another offense, was brought by the sheriff before the magistrate presiding at the preliminary hearing and there introduced as a witness, and while on the witness-stand was questioned. He was not admonished as to his right to decline to answer questions that tended to incriminate him, but in the course of his testimony he made statements which tended to incriminate him and which in substance amounted to a confession that he and the others had burnt the bridge. Evidence of these statements thus made was introduced by the State on the trial of the instant case, as confessions, and was objected to upon the ground that they were not freely and voluntarily made, but that the circumstances under which they were made precluded their being of the character of a free and voluntary confession. The objection was overruled. We are of the opinion that the court did not err in this ruling. Counsel for plaintiff in error relies largely on the case of *Adams v. State,* 129 *Ga.* 248 (supra), where is was said: " The spirit of the law is that one accused of crime shall not be required to be put under oath, and thus to be placed in the dilemma of either being required to testify as a witness against himself, or being subject to the penalties of false swearing. His right to speak, not under oath, is a statutory privilege, and it is not lawful to require him to be sworn as a witness against himself. Where a coroner's jury has been summoned to hold an inquest over the body of a deceased person who appears to have been murdered, and another has been arrested and is held in custody, accused of the crime, he is not formally upon trial, but substantially he is so, and the crime for which he has been arrested, as well as his connection with it, is the subject of investigation. For the coroner, or other officer representing the State, to bring him forward as a witness

under such circumstances, require him to be sworn, and demand of him under oath to testify as to his own guilt or innocence, is in violation of the spirit, if not the letter of the statute. If he should decline to be sworn at all, or to answer questions, he must know that the effect would be disastrous to him. It is not a case where one may lawfully be called as a witness generally, but where, if certain questions are put to him, he may claim his privilege. It is a case where the accused ought not to be sworn at all." But it will be observed in the *Adams* case that the prisoner himself had been arrested for the commission of the crime in regard to which he was interrogated, and it was in the discussion of that situation that the court made the ruling insisted upon by counsel for plaintiff in error as applicable here. Further on in the opinion in the *Adams* case it was said: "It may be that there is nothing in the fact of an arrest alone which will make a voluntary confession of a party under arrest inadmissible; or if one voluntarily makes a confession or inculpatory statement before a magistrate, this alone may not render it inadmissible; or, as suggested above, where it is lawful to swear a person as a witness, so that the general examination of him is proper, but if the witness is asked certain questions he may claim his privilege, the administration of an oath may not alone render a confession voluntarily made inadmissible on a subsequent trial. But we think there can be no doubt that, where it is unlawful to require the accused to be sworn as a witness, to do so, and to draw out of him, by questions, confessions or inculpatory statements under oath, is improper; and such statements are not admissible against him, if he is subsequently tried for the offense involved."

The prisoner, it is true, was in the custody of the law at that time; but it does not from the ground of the motion appear that he was then charged with the commission of the offense for which he was being tried in the present case. His answers given under those circumstances were admissible, even though he was not cautioned that he need not answer a question which tended to incriminate him. If he had claimed his privilege, no doubt it would have been allowed. What we are saying here is also applicable to the objection to the prisoner's statement before the grand jury.

9. Error is assigned upon the following charge of the court:

." First, address yourselves to the consideration as to whether or not there was a confession made by the defendant, and if there was as contended by the State, see if that confession was freely and voluntarily given without the slightest hope of reward or remotest fear of punishment; and if you are not satisfied beyond a reasonable doubt of such circumstances, address yourselves to the consideration as to whether or not there was any other confession made at any time; and if there was, apply the same rules to that and see if that measures up to the standard and rules which the court has already given you in charge. If there be such confession or confessions, either one or more, or any at all, which was made freely and voluntarily and without the slightest hope of reward or remotest fear of punishment, then even though you are satisfied of that beyond a reasonable doubt, you would not be authorized to convict this defendant, but go further and see if the crime itself has been committed, to wit, the burning of the railroad bridge, or if there are any other corroborating circumstances, as contended by the State; and if that is established, that is to say, corroboration of the alleged confession was shown to your satisfaction beyond a reasonable doubt, and all other elements of the alleged offense are present and shown to your satisfaction beyond a reasonable doubt, that is to say, if you are satisfied beyond a reasonable doubt under the rules of law that the defendant is guilty as charged, alleged and contended on the part of the State, then it will be your duty to find this defendant guilty, and the form of your verdict would be, ' we the jury find the defendant guilty.' "

The first objection to this charge, which is in effect that the language in which the jury were instructed that " the confession must have been made without the slightest hope of reward or the remotest fear of punishment, was disposed of by the ruling made in the seventh headnote. In other respects the charge is not beyond criticism. It is wanting in clearness and accuracy. The language, " but go further and see if the crime itself has been committed, to wit, the burning of the railroad bridge," standing alone would seem to intimate that proof of the burning of the railroad bridge would itself show the commission of a crime, whereas proof of the fact that the railroad bridge was burnt would not show that the crime was committed, without other

proof of circumstances showing that the fire was of incendiary origin; for if nothing more than the burning was shown, that would be presumed to have been accidental rather than occurring through some criminal agency. But that particular part is not criticised upon the ground here indicated. · Movant does criticize that part of the charge and say that it is error " for the reason that the burning of a railroad bridge would not be corroboration of the confession; since the presumption of law is that if the bridge was burned it was an accident, and for the court to charge as it did, that if they found the confession was freely. and voluntarily made, . . that would make out a case against the defendant, was error, since proof of the burning would not be a corroboration of confession in the case, where the charge is arson." This exception is not based upon the ground we have indicated above, and the court did not charge that the burning alone and the confession would make out the case; for the court added, after referring to the burning, " if there are other corroborating circumstances, as contended by the State, and if that is established, that is to say, corroboration of the alleged confession is shown, and to your satisfaction beyond a reasonable doubt, and *all other elements of the alleged offense are present* [italics ours] and shown to your satisfaction beyond a reasonable doubt," etc. Taking the entire excerpt together, the court made a verdict of conviction depend· upon proof of the burning, all other circumstances, and proof of " all other elements of the alleged offense;" and, besides, added that the jury must be satisfied beyond a reasonable doubt. We do not think the jury were misled by this charge, though, as we have said above, there were present inaccuracies in the charge as framed and submitted to the jury. But these inaccuracies were not of such character as to require the grant of a new trial.

*Judgment affirmed. All the Justices concur, except*

. RUSSELL, C. J., dissenting. After the most careful study of this case and the most painstaking investigation of every detail of the record that lies within my ·limited capacity, I am compelled to dissent from the judgment of affirmance in this case. I dissent quoties toties. I am not thinking of the defendant. From the countenance of the case as developed from the evidence he seems to be a bad citizen. He may be guilty not only. in the in-

stance involved in this trial, but of other crimes, richly deserving death itself. I do not say that the evidence showed this, for I shall express no opinion upon the testimony in the trial which we are reviewing. As the trial was had, I will say that the jury could not have found any other verdict than the one which was returned by them. I drop the defendant out of sight, and likewise the evidence in the case except in so far as it is necessary to refer to it in the consideration of the exceptions of law presented by the record. Conceding for argument's sake that the plaintiff in error for every reason that can be imagined deserves death, I must protest the injury to the law which I seem to foresee in the creation of a precedent which will be established by some of the rulings of the majority in the case now sub judice. I have no criticism for my learned and experienced brethren; measured by the doctrine of probability as deduced both from numbers and experience, it may be probable that they are right and I am wrong; but claiming that I am actuated by motives no less conscientious than theirs, I must express my dissent from their ruling upon two very important points raised by the present record, and give my reasons for the faith that is in me. A dissent on the part of one judge is ineffectual to alter the judgment or change the current of the law; so I need say nothing as to the assignments of error in the present record other than those just referred to.

1. The defendant in the court below, at the conclusion of the evidence for the State, sought to prove an alibi and to prove the falsity of an alleged confession attributed to him, and offered three witnesses in turn by whom he sought to establish an alibi, and the testimony of all of these witnesses was rejected and repelled severally and seriately upon objection of the solicitor-general. The solicitor-general objected, " because the testimony as to where the witnesses were on the night of May 29, 1921, is irrelevant and immaterial at this stage of the trial, without any denial on the part of the defendant of the alleged confession shown by the State, insisting that the only relevant thing now is whether the confession is true, and that until he [the defendant] *makes a denial* or says that the confession was made under circumstances on which the jury ought not to believe, he can't collaterally attack it by showing that this man wasn't with him; it being at this time entirely irrelevant and immaterial whether this witness was there

or not, the State not having undertaken to show as a substantive fact that he was there, and the only issue before this jury is whether or not Fairfield did it." When the witness Thomas was called to the stand he was asked where he was on the night of May 29, 1921, the same being the night of the alleged burning, and the State claiming that in the confession the defendant stated that the witness was with the defendant at the time of the burning and helped to burn the bridge. The solicitor-general objected to this evidence, on the ground that the defendant had not denied the confession that had been introduced, and that said evidence was irrelevant and immaterial. The court retired the jury, when counsel for the defendant stated to the court: " We expect to show by the witness that on the night of May 29, 1921, Mr. O. C. Fairfield [the defendant] carried him out to a picket post near the house of Mr. E. M. Bishop, or Ed Bishop, and that from the time he was left there until the next morning about 7 or 8 o'clock on the morning of May 30th, he was at and around that picket post; that he did not come to Crisp county by himself or in company with O. C. Fairfield, the defendant, or in company with any other person, but stayed at the picket post from about 7:30 in the evening of May 29 until 7 or 8 o'clock in the morning of May 30, 1921." The objection of the solicitor-general, which we have just quoted, was sustained and the evidence repelled. The defendant next introduced Jim Russell. When defendant's counsel asked him the questions, " Where were you on the night of May 29? Did you see O. C. Fairfield that night at any time?" the solicitor-general objected to the evidence upon the ground that it was irrelevant and immaterial; and the jury having been retired, defendant's counsel stated to the court: " We expect to show by this witness that he made his home with Mrs. M. L. Willingham, boarded at her house; that on the night of May 29, 1921, he was at his home at her house from nine o'clock on for the balance of the night; that he didn't leave her house that night in company with this defendant, nor in company with any other person, and come to Crisp county, or go out of the city of Fitzgerald to any other place, but that he was at her boarding-house, his home, all night on the night of May 29th, 1921."

The solicitor-general is frank enough to say that the exclusion of this testimony was technically erroneous, but insists that the

error was cured by the fact that the rejected testimony was later admitted by the court. The learned attorney-general contends " that the evidence ruled out upon the alleged dictation of the solicitor-general was not of such nature and effect as to make the ruling of the court erroneous. It will be noticed from the defendant's statement that he never did deny making a statement, although he claimed he had lied in making same. We contend that the court ruled properly on this matter; and that the court's discretion as to what constitutes orderly procedure is one that will not be controlled by this court, unless it is shown conclusively that the ruling of the court was arbitrary, unreasonable, and oppressive." It will be seen from the above that the attorney-general is still of the same opinion as that entertained by the solicitor-general at the time he made the objection that the testimony was irrelevant and immaterial until the defendant denied the alleged confession, or, in other words, that the court had the right to forbid the defendant to introduce any evidence tending to show an alibi unless and until he did deny the alleged confession. In my opinion both of the State's counsel misconceive the exception and the error assigned. In the decisions in *Reich* v. *State,* 63 *Ga.* 616, *Roberts* v. *Tift,* 136 *Ga.* 906 (72 S. E. 234) ; *Woods* v. *State,* 137 *Ga.* 85 (4) (72 S. E. 908), cited by State's counsel (as well as a large number of similar decisions which I have examined), the point was simply confined to the mere admission of testimony, and the rulings seem to arise in a large number of instances from the difficulty experienced by this court in determining what actually transpired in cases where exception was taken to the refusal of the court to admit certain evidence when it appeared in the same case from the record that the testimony was introduced. Thus originated the ruling. It has since been extended to cases where it is shown by the record that the court at one stage of the case refused to admit evidence, and later, changing his mind, permitted the introduction of the evidence formerly repelled; and this court has held the error to be harmless.

However, in my opinion, learned counsel for the State miss the whole point of the exception presented by the plaintiff in error in this case. In this question is presented much more than the mere admissibility of testimony, and the consequent ruling that error in the rejection of testimony might generally be cured, pro-

vided that the party offering it had the benefit of it in the trial. The objection of the solicitor-general went to the point that the testimony was immaterial and irrelevant, not generally, but in the particular case then being tried, unless and until the defendant denied the confession attributed to him by the State's witnesses. And the error of the court in not sustaining the objection was not due so much to the exclusion of the testimony as to depriving the defendant's counsel of the right of proceeding in his own order to represent as he thought best in the conduct of his client's case, and also in virtually compelling the defendant to make a statement at the instance of the State's counsel. There are few constitutional rights which are esteemed to be of greater value than the right of counsel. It is a right guaranteed by the constitution of the United States as well as by that of our own State. I shall not attempt to comment upon the benefits of counsel nor the value of the right, because the views of this court upon this subject were long ago expressed in a manner which I can not approach, by Judge Nisbet in the *Berry* case, 10 *Ga.* 511. With this right the court should never interfere, nor should the court ever hamper its exercise except to prevent a breach of orderly procedure or a violation of law. Even if the court thinks that the client's lawyer is pursuing an injudicious course or failing to avail himself of his client's best defense, it is not a question for the court; for the point is similar to that involved in determining who is leading counsel, as to which this court has held that it is not for the judge to determine from his knowledge nor from the prominence of parties who is leading counsel, but that fact is to be determined solely by the client and his honest choice as to which of several counsel he mainly relies upon. So in this case it was not a question for the court, after the statement of counsel that to proceed first with a denial of the confession, or to introduce testimony in a different order from that which he had mapped out would weaken the defense by disturbing the line of defense already determined by him, to vary that order by acceding to the suggestion and demand of the solicitor-general for a different order of procedure; and certainly it was improper and I think injurious in this case for the court in the presence of the jury to accede to the demand of the solicitor-general that the defendant must make a statement. It may be said that the language can not be so con-

strued. But the objection of the solicitor-general to the evidence offered by the defendant, which objection the court sustained, was that the offered evidence was inadmissible because the defendant had not denied the alleged confession. The jury, having learned to whom the confession was made and having already ascertained from the evidence adduced by the State that all of the persons alleged to have been present had already testified substantially to the same effect as to the confession, knew as sensible men that there was no one to deny the confession except the defendant alone; and they knew as well as defendant's counsel that that which happened would happen: that the defendant would have to make a statement and be compelled to deny the confession as the price to be paid to enable him to have the testimony of his witnesses as to other points.

In my opinion the ruling of the court as to this point conflicts altogether with the spirit of several of the decisions of this court, in which it is held that it is error for State's counsel even to refer to the fact that the defendant has not made a statement. The law gives the defendant the same right not to make a statement as to make one, with freedom from criticism provided he chooses the former rather than the latter course. In the case at bar the solicitor-general argued to the court, in the presence of the jury, facts from which no other inference could be drawn than that it was the duty of the defendant to deny the confession attributed to him, and the jury knew that he could only deny by a statement; and this despite the fact that a defendant is not required to deny anything either by statement or by testimony in order to be permitted to introduce testimony, nor is he required to introduce testimony at all. The question here involved is not a mere question of practice and procedure, but it is a question of the right of a defendant to control, through his counsel, the conduct of his own case; and these questions were not involved or considered in any of the cases in which it has been ruled that the rejection of admissible testimony may generally be cured by its subsequent admission. In the trial of a capital felony the conduct of the case and the order in which it shall be presented to the court and jury, and whether or not the defendant shall make a statement, are questions of delicacy and gravity which go to the very heart of the issue. Frequently an announcement of ready is

made with knowledge on the part of counsel that one of his client's witnesses is not then present in the court-house but with the assurance that he will be present at the stage of the case in which his testimony will be in order. The result of a trial as the outcome of a battle frequently depends upon the development of the evidence in such logical sequence as to carry conviction, where, were the evidence circumstantial and if the evidence was thrown in disjointed fragments helter-skelter before the jury, they would fail to catch the significance of many of the fragments and confusion, and loss of the case would be the inevitable result. As order is God's first law, so is order the underlying foundation, the all-pervading element, of human law and legal procedure.

I can not say that the rulings upon the point now being considered, and which I conceive to relate principally, if not altogether, to the right of a fair trial with benefit of counsel, unhampered by aggravating restrictions and free from interference or dictation from the counsel of the opposite party, fall within the decisions which relate merely and are confined entirely to the question of the admission of evidence. The solicitor-general had no doubt entertained this view, and no doubt the learned trial judge sustained the objection upon the idea that his ruling was in accordance with the law. This is apparent from the fact that the solicitor-general in making the objection conceded that the evidence would be admissible at a later stage of the trial; and the court seemingly paid no attention to the statement made by counsel in his place as attorney for the defendant, that he would be greatly hampered and his client injured by being prevented from presenting his case in the manner and order in which he had prepared and mapped it out. The ruling of the court upon the objection of the solicitor-general in this case must be adjusted as every other open ruling of every other court upon the same question; that is to say, the ruling must be adjusted to and coextensive with the objection made. Thus State's counsel having objected, not that the testimony was under all circumstances irrelevant and immaterial, but that it was irrelevant and immaterial in advance of a denial of the confession, though it would be admissible thereafter, the sustaining of the objection by the court was a ruling by the court, not that the evidence was irrelevant and immaterial and inadmissible generally, but that in the particular case and under

the particular facts of that case it could only become admissible provided the defendant denied the confession. This forced the defendant to deny the confession, whether his denial was the truth or not; for he was told by the court that otherwise he would not be permitted to attempt to prove his defense of alibi. I think that the solicitor-general properly concedes that the rejection of the evidence was error. This then is settled. I can not agree that any of the decisions heretofore rendered by this court intimate that this error can be obviated and rendered harmless where it appears that there is involved in the rejection of the evidence the right of a party's counsel to conduct his client's case in his own way, and not according to the dictation either of opposing counsel or of the court.

Altogether aside from the guilt or innocence of the present plaintiff in error, there is involved an abridgment of one of the very essential elements of a legal trial,— the benefit of counsel. Likewise this ruling will restrict the privilege now allowed by law to defendants in criminal cases of deciding when they will or will not make the statement, which is now accorded as a matter of privilege and justice, by establishing the principle that in certain instances the judge can require a statement to be made as a prerequisite to permitting a defendant to introduce testimony the relevancy and need of which can not be gainsaid.

2.   The court erred in refusing to allow the defendant to make a second statement. I have clearly in mind the numerous rulings of this court to the effect that permission to make a second statement is a matter within the discretion of the trial judge. The fact that most matters of procedure must of necessity be left to the discretion of the trial court does not preclude the thought that that discretion may in some instances be improperly or unwisely exercised, and that also the discretion may be misused, which means the same thing as abused in a legal sense; and in this case I think (speaking juridically) that the learned trial judge misused and therefore abused the discretion vested in him. Without considering the merits of the assignment of error relating to the introduction of evidence in rebuttal of the defendant's statement, or at least admitted because it was held to be in rebuttal, the court permitted the witness Lewis to testify as to statements alleged to have been made by the defendant, confessing

his presence at what was called the Cascade wreck in Fulton county, to which no reference had been made either in the evidence in chief on behalf of the State or in the statement or testimony in behalf of the defendant; but declined to allow the defendant to make a second statement in explanation of and restricted to the incriminatory testimony introduced for the first time after the defendant had made his statement. Viewing the record as a whole, I think that the exception alleging that this was an abuse of discretion and harmful to the defendant is well sustained. The discretion of a trial judge may be well exercised when the defendant, in requesting the privilege of a second statement, proposes to enlighten the jury as to a matter which he has had full opportunity to have presented in his first statement, or where in the request to be allowed to make a second statement he does not disclose to the court what he intends to state, so as to enable the court to determine whether a ground for the exercise of his discretion in favor of the defendant might exist; but when, as in the present instance, the court is apprised of the scope and extent of the privilege asked in the request for a second statement, and it plainly appears that through no fault of the accused new matter which is immaterial has been introduced by the State, and especially when such new matter is not in rebuttal of anything presented in behalf of the defendant, it is in my opinion an abuse of discretion for a trial judge to refuse to permit the defendant to give his version of the new and unexpected testimony against him, for without it he has not had the privilege of a statement; or to state it perhaps more accurately, he has been deprived, through no fault of his own, of a part of his right to make a statement.

I think that there is merit in some of the other exceptions contained in the bill of exceptions; but as they do not tend to establish any new principles, and the error, if any, consists in the misapplication of the trial court of abstract principles in themselves correct, and are recognized throughout this country, and as this case, by the judgment of the majority, will never be tried again. an expression of my views could serve no useful purpose.