## 19344. McCLUSKEY v. THE STATE.

ARGUED MAY 15, 1956—DECIDED JUNE 11, 1956.

*Graham Glover*, for plaintiff in error.

*Chastine Parker, Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson*, contra.

ALMAND, Justice. Lordy McCluskey was indicted in two counts for the murder of James Hammond on February 5, 1955. The first count charged that he did kill and murder Hammond by scalding and burning him with boiling water, steam and other hot boiling fluids, inflicting mortal wounds from which Hammond died. The second count charged the defendant with maliciously setting fire to and aiding and abetting in the burning of the dwelling house occupied by Hammond, which produced and caused the death of the deceased. Lordy McCluskey was tried along with Pink McCluskey, who was also indicted for the same offense. The jury returned a verdict finding Lordy McCluskey guilty, with a recommendation to mercy. He was sentenced to life imprisonment, and thereafter his motion for a new trial upon the general and certain special grounds was denied, and he prosecutes a writ of error to this court, assigning error on that ruling.

The evidence adduced for the State at the trial may be summarized as follows: James Hammond and a woman by the name of Pearlie Mae Jones lived together in a house near the City of Rome. On the afternoon of February 5, 1955, two persons, in passing this house, heard Pearlie Mae Jones and James Hammond cussing and fussing. About 8:40 p. m., Pearlie Mae Jones asked Eva Durham to call a taxi for her; she stating that she was going home with Lordy and Pink McCluskey. Pearlie Mae Jones and the McCluskeys were picked up by a taxicab at about 9 p. m., and several persons residing near the home of Pearlie Mae Jones and the deceased testified that at about 9 p. m. they discovered that the house was on fire. When they entered the house, they

found some of the furniture and furnishings were on fire, and that a coal heater containing live coals was turned over and a water kettle was on the floor nearby. James Hammond was discovered on the floor near a couch, which was burning. He was removed to a hospital, where he died the next day without regaining consciousness. The medical testimony was that he died from widespread burns, causing the loss of asaline fluid, which, connected with the shock and carbon monoxide in his system, caused death to result, and that his death was the result of the burns, notwithstanding his having inhaled carbon monoxide. There was testimony that he was burned around the face and neck and body by hot liquids, and that the burns were not caused by a direct flame. There was no evidence that Lordy McCluskey was in the house at the time it began to burn, or when Hammond came in contact with any hot liquids. There was no evidence that Lordy McCluskey and the deceased had had any quarrel or argument, nor any word or act by McCluskey which would show any motive or reason for him to commit any criminal act against the deceased. Nor was there any evidence of any acts or words that would indicate Lordy McCluskey to have been a party to any conspiracy with Pearlie Mae Jones or Pink McCluskey to burn the house or to do any harm to the deceased.

In his statement, Lordy McCluskey stated that he went to the house of Pearlie Mae Jones about 4:30 p. m. on February 5, 1955, and stayed until Pearlie Mae asked him to call a cab, when he left the house.

■ The taxi driver testified that he picked up Pearlie Mae Jones and the two McCluskeys about 9 p. m. on February 5. Over the objection that no conspiracy had been proven, the court permitted the driver to testify that Pearlie Mae Jones, while in the presence of the defendant, stated: "That son of a bitch show did holler when I throwed the hot water on him." The admission of this testimony is complained of in the first special ground of the motion for a new trial, one ground being that no conspiracy had been proven, and that the person to whom she referred in making the quoted statement was not identified. During the trial, over objection, the court admitted in evidence a written statement signed by Pearlie Mae Jones, which was made to officers on the night of February 6. In this, she stated nothing that

would show any admission or confession as to any criminal act on her part or on the part of Lordy McCluskey, one of the grounds of objection being that there had been no proof of a conspiracy between Pearlie Mae Jones and the defendant. The admission of this statement is complained of in special ground 2. The third special ground assigns error on the court's charge as to principals in the first and second degrees, it being contended that there was no evidence which would authorize this charge. Error is assigned on the rulings and the charge in the third special ground.

Unless a conspiracy is shown prima facie, evidence of acts or declarations of a codefendant can operate only against the person whose acts or declarations are proven if he is on trial. If he is not on trial, they are not admissible against the defendant on trial. *Wall v. State*, 153 *Ga.* 309 (2) (112 S. E. 142); *Johnson* v. *State*, 186 *Ga.* 324 (2) (197 S. E. 786); *Lanier* v. *State*, 187 *Ga.* 534 (4) (1 S. E. 2d 405). "The law does not permit proof of declarations and acts of an individual who is alleged to be a co-conspirator of the defendant on trial for the purpose of proving the fact of a conspiracy, but requires that the existence of the conspiracy be proved by legal and proper evidence; and when this is done the declarations and acts of a co-conspirator made during the conspiracy are admissible against the defendant." *Lanier* v. *State*, supra, p. 543. There is no evidence in this case, direct or circumstantial, which shows that this defendant was a party to any unlawful agreement to burn the house which the deceased occupied, nor that he was a party to any criminal agreement in scalding or burning the person of the deceased. The fact that he admitted being in the house of the deceased a short while before the burning, and that he left the neighborhood in the company of Pearlie Mae Jones shortly before the fire was discovered, in the absence of any other evidence connecting him with the burning of the house, is insufficient evidence from which to draw the conclusion that he was engaged in a criminal enterprise. There being no prima facie proof of a conspiracy, it was error to admit in evidence the statement of Pearlie Mae Jones made in the taxicab, and the written statement made by her on February 6; and the court likewise erred in charging the jury the law relating to principals in the first and second degrees.

■ The State relied entirely upon circumstantial evidence.

The evidence in this case does not measure up to the rule laid down in Code § 38-109, which provides that "to warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." There is no evidence of any bad feeling, threats, or argument between the defendant and the deceased, nor any reason why the defendant should wish to kill the deceased. The evidence in this case did not show beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that the defendant committed either the act of setting the house on fire or of burning the person of the deceased with hot liquids, and was wholly insufficient to authorize the verdict of the jury on either count of the indictment. See, in this connection, *Brooks* v. *State*, 128 *Ga.* 261 (57 S. E. 483, 12 L. R. A. (NS) 889); *Futch* v. *State*, 137 *Ga.* 75 (3a) (72 S. E. 911); *Fudge* v. *State*, 148 *Ga.* 149 (2) (95 S. E. 980); *Roberson* v. *State*, 190 *Ga.* 664 (10 S. E. 2d 403); *Peters* v. *State*, 211 *Ga.* 370 (86 S. E. 2d 106).

It follows that the court erred in denying the motion for a new trial.

*Judgment reversed. All the Justices concur.*