24823. PRITCHARD v. THE STATE.

SUBMITTED SEPTEMBER 12, 1968—DECIDED NOVEMBER 7, 1968— REHEARING DENIED NOVEMBER 21, 1968.

*Respess, Venable & McBrayer, John L. Respess, James R. Venable, H. G. McBrayer, Jr.,* for appellant.

*Andrew J. Whalen, Jr., Solicitor General, Arthur K. Bolton, Attorney General, Marion O. Gordon, Assistant Attorney General, William R. Childers, Deputy Assistant Attorney General,* for appellee.

MOBLEY, Justice. ■ J. B. Pritchard was charged with the offense of robbery by the use of an offensive weapon, was convicted, and given a sentence of twenty years. The robbery occurred on August 13, 1967, at the home of Bill Morris, and the witnesses to the robbery testified that three armed men accomplished the robbery by using an acetylene torch to cut open a safe in the home, and that one of the robbers talked on a

walkie-talkie during the progress of the crime. The three men were later identified as Herman Saxton, Richard Jenkins, and Denvil Ronald Daniel. The question made as to the sufficiency of the evidence is whether there was sufficient evidence to corroborate the testimony of Daniel that the defendant was also a participant in the robbery.

Daniel testified on the trial that: The defendant assisted in planning the robbery, was the one who told them about the safe, made a call to see if Morris would be away from home at the time they planned to commit the crime, preceded the others in his truck, operated a walkie-talkie in nearby woods for the purpose of giving them help if they needed it, and received a share of the proceeds of the robbery. When the witness came to Griffin (the home of the defendant), the defendant gave him a Veteran's Georgia driver's license, a draft registration card, and a social security card, which the witness gave back to the defendant after the money was divided.

Daniel and Saxton both testified that the automobile used in the robbery was a blue and white Pontiac belonging to Saxton, in which he had an acetylene torch, walkie-talkies, binoculars, and a gun, all of these items being used in the robbery.

Saxton testified further that: He communicated with some person by means of a walkie-talkie during the robbery, but he did not know who it was. He was arrested in Knoxville, Tennessee on the violation of a mandatory release from the Federal Prison. He left his automobile parked in a parking lot behind some apartments in the 900 block of Walnut Street, and when he left the automobile it had in it some money, some clothes, a torch, and other equipment.

Sheriff Dwayne Gilbert testified that when the defendant was arrested on October 12, 1967, he was searched and there were found on his person eight blank Veteran's Georgia driver's licenses.

Sergeant Bill Major, a member of the Police Force of Knoxville, Tennessee, testified: He saw the defendant in Knoxville, on some date between the 20th and 25th of August. They received a call in the 900 block of Walnut Street, and went there to answer it. When they got there they found a wrecker driver

with a wrecker, and the defendant was standing at the back of the car. The defendant "said that he was a representative of a finance company and he had come there to repossess an automobile. And he wanted to know if it was all right to pull it off the lot with the wrecker, after he had shown me the papers that he had, showing that the finance company did have this car for a lien on it. So, I told him he would have to go get a replevin warrant. And he proceeded to tell me he was going to pull it regardless, because he didn't have time to go get a replevin warrant. I said, 'Well, that's up to you.' And then I said, 'That is between you and the fellow that owns the car, or had the car,' and that's as far as the conversation went." The car was on private property back of an apartment building. It was a 1961 or 1962 Pontiac, white over blue. The witness left the defendant standing there with the wrecker driver.

Sheriff Gilbert testified that he had known the defendant for more than fifteen years, and he had never known him to be in the business of repossessing automobiles for finance companies.

The defendant in his statement denied that he had any connection with the robbery, and denied being in Knoxville, Tennessee.

"The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt." *Price v. State*, 208 Ga. 695 (3a) (69 SE2d 253) ; *Allen v. State*, 215 Ga. 455 (2) (111 SE2d 70). "Corroboration of the accomplice as to the time, place, and circumstances of the transaction, if there be nothing to show any connection of the defendant therewith except the testimony of the accomplice, is not sufficient to support a conviction." *Lanier v. State*, 187 Ga. 534 (1) (1 SE2d 405).

Under these rules, the circumstantial evidence relied on by the State to corroborate the testimony of the accomplice, as required by *Code* § 38-121, is insufficient. The testimony that the defendant had on his person blank Veteran's driver's licenses when

he was arrested about two months after the robbery was a circumstance to show that he could have provided Daniel with such a license as that testified to by him. This evidence, however, merely corroborated the testimony of Daniel, and was not evidence, independently of the testimony of Daniel, to connect the defendant with the crime, since there was no evidence other than that of the accomplice that a driver's license was used in the perpetration of the crime.

The testimony that about a week or ten days after the robbery an officer in Knoxville, Tennessee, saw a man, identified by him as being the defendant on trial, attempting to remove an automobile with somewhat similar description to that given by Saxton of the automobile used in the robbery was merely a suspicious circumstance, and it can not be held that it was evidence to connect the defendant with the crime, or to lead to the inference that he was guilty, independently of the testimony of the accomplice.

Since there was no prima facie showing of a conspiracy between the defendant and his alleged accomplices, there was no basis for the allowance in evidence of the acts or declarations of these alleged accomplices. *McCluskey v. State,* 212 Ga. 396 (93 SE2d 341).

■ Error is assigned on the refusal of the trial judge to grant the motions of the defendant to direct a verdict of not guilty. In *Sutton v. State,* 223 Ga. 313 (1) (154 SE2d 578), this court held that under the Appellate Practice Act of 1965 (Ga. L. 1965, pp. 18, 20, as amended by Ga. L. 1966, pp. 493, 494), a defendant in a criminal case could enumerate as error the overruling of a motion for directed verdict. The *Sutton* case was decided April 20, 1967. The Civil Practice Act (Ga. L. 1966, p. 609), which became effective September 1, 1967 (Ga. L. 1967, pp. 8, 226, 250), specifically repealed *Code* § 110-104, as amended by Ga. L. 1961, p. 216, the statutory law authorizing the direction of verdicts which was in existence at the time the decision in *Sutton v. State,* supra, was rendered (Ga. L. 1966, pp. 609, 687, 690; *Code Ann.* § 81A-201 (bb)), and enacted a new section dealing with directed verdicts (Ga. L. 1966, pp. 609, 656; Ga. L. 1967, pp. 226, 237, 246, 248; *Code Ann.* § 81A-150). This

latter section applies only in civil cases, since the Civil Practice Act governs procedure only in cases of a civil nature. Ga. L. 1966, p. 609.

Since the statute authorizing directed verdicts in existence at the time the *Sutton* case was decided has been repealed, and there is presently no statutory authority for the direction of a verdict in a criminal case, the ruling in the *Sutton* case that a defendant in a criminal case can enumerate as error the failure to direct a verdict of not guilty is no longer controlling authority. It would be fruitless to enumerate as error the refusal to direct a verdict of not guilty when there is no duty resting on the trial judge in any criminal case to direct a verdict of not guilty.

It was not error in the present case for the trial judge to refuse to direct a verdict of not guilty.

■ None of the other assignments of error is meritorious. Because of the insufficiency of the evidence to support the verdict, the case is remanded for a new trial.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., and Frankum, J., who dissent.*