45690. HERRING v. THE STATE.

EBERHARDT, Judge. R. L. Herring was indicted and convicted of larceny of a tractor. From the denial of his motion for new trial he appeals, enumerating as error the admission of certain evidence, the refusal of the court to direct a verdict of not guilty, a portion of the charge, and the overruling of his motion for new trial. *Held:*

1. There was proof that the tractor was taken from the lot of McCranie Motor Tractor, Inc., that the defendant paid Jimmy Lee Peterson to steal it, pointing out to him the tractor to be taken, that Peterson delivered it to defendant's home by driving it at night from the McCranie lot along a route designated by defendant, that it was sold by defendant to Heyward Apperson for less than half its value, that defendant had written on Apperson's check given in payment that it was for corn, and that the tractor was found by a deputy sheriff at Apperson's

farm with the motor and serial numbers removed. The removal of the motor and serial numbers thus made it impossible to show that the tractor which the deputy sheriff found carried the numbers alleged in the indictment, and the law does not require doing of the impossible. Lex non frustra facit. Compare *Johnson v. State,* 215 Ga. 839 (5) (114 SE2d 35). The allegation as to the motor and serial numbers became immaterial. The cases of *Wright v. State,* 52 Ga. App. 202 (182 SE 862), *Wilson v. State,* 93 Ga. App. 375 (4) (91 SE2d 854), *Davis v. State,* 97 Ga. App. 342 (5) (103 SE2d 86), and others of like tenor, do not require a different result. Just as it is the identity of the person, and not identity of the name that is the true test *(Wilson v. State,* 67 Ga. App. 404 (20 SE2d 433) and citations), it is the identity of the vehicle and not the identity of a motor or serial number that it may have once carried that is the true issue. What was required in this situation was that the State present evidence which sufficiently identified the tractor as being the same one which had been purloined form McCranie's lot. See *Jackson v. State,* 61 Ga. App. 587 (6 SE2d 791). This the State did. The evidence was amply sufficient. The tractor was positively identified by the number on its starter—which had not been removed. It was the same make, type and model. Peterson positively testified that he took the tractor, which defendant had pointed out to him, from the McCranie lot and delivered it to defendant at his home. Compare *Wilson v. State,* 94 Ga. App. 737 (96 SE2d 281).

It was held in *Wiley v. State,* 74 Ga. 840, that "Where an indictment charged a defendant with having stolen a white barrow hog, marked with a crop and underbit in each ear, and the prosecutor testified to having lost a white barrow hog with a crop in each ear, *and there was no further identification* of the stolen property, this was not sufficient to warrant a verdict of guilty." (Emphasis supplied). A similar situation was before this court in *Musgrove v. State,* 68 Ga. App. 561, 562 (23 SE2d 201), and it was held "But where, as in the case at bar, the stolen bull was recovered alive and unharmed and brought back to his keeper who positively identified it as the white-faced Hereford bull, and the only bull, that was stolen from him, and

where that evidence was not contradicted, even by the defendant's statement to the jury, the variance between the allegations in the indictment and the proof was cured, and the difference between an 'underbit' and an 'overbit' became immaterial. The uncontradicted *evidence for the State demanded a finding that the bull alleged to have been stolen was, in fact, the bull stolen by the accused.* And so it is here. The uncontradicted evidence of the State demanded a finding that the tractor alleged to have been stolen was, in fact, the very tractor stolen by the accused and recovered from one who purchased from him.

Defendant attempted to explain his connection with it by asserting in his unsworn statement that he had purchased the tractor from a man unknown to him who came through Sylvester with it on a truck, saying that he wanted to sell it and was taking it to an auction place near Moultrie, and that he paid for it in cash. The general grounds of the motion for new trial are without merit.

2. It is not error to refuse to direct a verdict of not guilty in a criminal case. *Pritchard v. State,* 224 Ga. 776, 779 (164 SE2d 808).

3. Mr. Abner Johnson, president of McCranie Motor Tractor, Inc., called as a witness for the State, testified that his company purchased tractors from the John Deere Tractor Company of Waterloo, Iowa, and that in the regular course of business invoices for the tractors always were sent after delivery to the place of business in Unadilla, and that the invoices carried the motor numbers and serial numbers of the tractors. He testified that the motor number was M23RO219315R and serial number T-213R 203699R checked with those on the invoices, and as to how that was done asserted: "We have a large IBM sheet with all of our equipment on it. . . We checked and compared it with our IBM statement." "Q. How about—do you check it with the invoice? A. Well, this invoice is put on that statement, one big sheet, where we don't have to carry all the invoices around separately. . . Q. But these numbers were put on there by the John Deere factory, weren't they? A. Right. Q. On this invoice. And you can not get up before this court and jury and swear as

to the accuracy of those two numbers which somebody else put on the machine and put on this paper, can you? A. Yes. Q. How can you? A. Those numbers have been checked twice and had there been an error we would have found it. Q. Did you check these numbers before October 29th? A. Yes. . . Q. What you're saying is that it's customary that sometimes during the given month, that these numbers would have been compared against the invoices twice? Is that your custom? A. Well, yes. . . Q. Did you personally check these records yourself? A. Yes, sir. Q. And your testimony is that you personally checked this number against that tractor unit? A. Yes."

His son, James Wade Johnson, an employee of the tractor agency, testified that when the tractor was unloaded the numbers on them were checked with the numbers on the invoices and found to be the same. "We take the invoice and check the invoice against the serial numbers on the tractors, and then we check the serial numbers aginst the invoice. Q. Jimmy, do you recall whether or not you were personally present when these tractors were unloaded. A. Yes, sir, I was. Q. Would you state whether or not you personally inspected the serial numbers on the tractors at that time? A. I did. I have to. . . I absolutely took the invoice and went to the tractor and checked the numbers against one another, I have to do that. . ."

On or about October 29, 1968, it was discovered that one of the floor planned tractors was missing from the lot where a number of them were kept, and Mr. Johnson testified that it carried the same serial number and motor number as did the invoice, referring to the invoice for the numbers. Defendant's counsel objected to Johnson's testimony relative to the numbers because it appeared that it was necessary that he refer to the invoice for the numbers and that he had no independent knowledge of the numbers otherwise.

No error is shown. He testified that the invoice was received in the regular course of business from the manufacturer, and that twice he had personally compared the numbers on the tractor itself with those on the invoice and had found them to be the same. Having done so, it was permissible that he refresh his recollection from the invoice. Code § 38-1707; Fairfield v. State,

155 Ga. 660 (2) (118 SE 395). "A witness can not, without finally testifying from his recollection of the facts, swear from a memorandum without showing that he made the memorandum *or at some time knew it to be correct.*" (Emphasis supplied). *Proctor & Gamble Co. v. Blakely Oil &c. Co.,* 128 Ga. 606 (2) (57 SE 879). While Mr. Anderson did not make the invoice which served as the memorandum here, he did testify that on two occasions he had compared the motor and serial numbers of the tractor as carried on it with those appearing on the tractor, and found them to be the same. Thus, at those times he knew the invoice to be correct, and since he knew that, it was immaterial that he had not made the invoice himself. When testifying he was asked: "Do you know the serial number and the engine number that was on the tractor that was missing?" and he answered, "Yes, I do," and upon being asked what they were, referred to the invoice and gave them. And, there was the similar testimony as to these numbers from James Wade Johnson who had also checked the serial and motor numbers on the invoice with those on the tractor and found them to be the same. See *Streeter v. State,* 60 Ga. App. 190 (2) (3 SE2d 235).

Moreover, this evidence was introduced for showing ownership in McCranie Motor Tractor, Inc., and the allegation of ownership was sufficiently supported when it appeared that the tractor was taken from the lawful possession of McCranie, whether title in it was shown or not. *Thomas v. State,* 27 Ga. App. 38 (2) (107 SE 418); *Evans v. State,* 60 Ga. App. 597 (4 SE2d 502).

4. For the same reasons it was not error to admit the invoice itself into evidence. Its correctness was established by the testimony of Mr. Abner Johnson and Mr. James Wade Johnson.

5. Error is enumerated upon the admission of a card which was identified by a witness for the State as a dealer's service record on the tractor, the objection being that the engine number, shown on the card as 23E-219315, was not the serial number carried on the invoice and which other witnesses had testified was the number carried by the tractor itself, and thus that the card was irrelevant and immaterial.

While it would appear on the face of it that the card carried an erroneous serial number and perhaps it would have been better

to have excluded it, we do not think this evidence was material or that its admission requires a new trial. Mr. Rex Rivers, a factory representative, testified that the basic engine number was 219315 and that the prefix and suffix thereto were code numbers which had been added at the factory and by which it could be determined whether the tractor was powered by a diesel engine, its size, model, etc. Under his testimony the jury was authorized to find that though there may have been an error in the prefix and an absence of the suffix code numbers, it nevertheless referred to a servicing of the tractor which McCranie Motor Tractor, Inc. had received under the invoice from John Deere Tractor Company, and which had been taken from the McCranie lot.

6. Jimmy Lee Peterson testified that he stole the tractor from the lot of McCranie Motor Tractor, Inc. pursuant to an approach by the defendant to him; that defendant took the witness to the lot and pointed out the very tractor that he wanted Peterson to get; that he delivered the tractor to the home of defendant and defendant paid him $381 in cash and canceled an account that he owed to defendant amounting to $120 for his services in stealing the tractor and driving it from the McCranie lot to defendant's home over a route which defendant had designated.

He had given to defendant's attorney two sworn written statements relative to the matter and which in some respects conflicted with his testimony at the trial. But the variations were not as to material matters. For example, he had asserted in one of the statements that he drove the tractor to a service station in Unadilla and stopped for the purchase of a candy bar and a cold drink, while in his testimony he asserted that he did not go to Unadilla at all, since the McCranie lot was to the south of that place and the designated route from the lot to defendant's home led south and did not go through town. There were some other deviations, but in the statements, as in his testimony, he asserts that he stole the tractor on the request and instruction of the defendant. Peterson admitted the falsity of the variations in the statements and asserted that he was telling the truth when testifying at the trial.

The court charged that a witness may be impeached by prior con-

tradictory statements shown, relative to issues in the case, and that if they should believe that any witness had made prior contradictory statements in variance with his testimony delivered from the stand, they might take it into consideration in giving weight to the testimony and would be authorized to disregard entirely the evidence of a witness whom they should find to have been impeached.

It was further charged that if the jury should find that any witness had wilfully and corruptly testified falsely as to any material issue in the case, they would have a right to disregard his testimony except insofar as it might be corroborated by other credible evidence.

Defendant contends that the court should have charged that if the jury should find that a witness had wilfully testified falsely, "his testimony shall be disregarded entirely," rather than that they were simply authorized to disregard it. There was no written request for a charge on impeachment, in the absence of which we find no error in the charge as given. See *Smaha v. George,* 195 Ga. 412 (3) (24 SE2d 385); *Hightower v. State,* 14 Ga. App. 246 (2) (80 SE 684); *Hudson v. State,* 108 Ga. App. 192, 199 (132 SE2d 508, 100 ALR2d 1395). Moreover, "[a] witness is not to be discredited because of a discrepancy as to a wholly immaterial matter." *Mann v. State,* 124 Ga. 760 (4) (53 SE 324, 4 LRA (NS 934).

> *Judgment affirmed. Jordan, P. J., and Pannell, J., concur.*
> ARGUED OCTOBER 5, 1970—DECIDED OCTOBER 14, 1970—
> REHEARING DENIED NOVEMBER 4, 1970—

*Wingate, Bartlett & Hayes, John H. Hayes,* for appellant.
*D. E. Turk, District Attorney, Guy V. Roberts,* for appellee.